*In re:* Ernesto Mieres Calimano, Fiscal, Tribunal de Distrito de Puerto Rico, Sección de San Juan; Pedro Pagán Soto, apelante; Brunilda Sepúlveda, apelada.

Número 11144.
*Sometido:* 3 de mayo de 1954. *Resuelto:* 10 de junio de 1954.

700

*Guillermo Bauzá,* abogado de la apelante; *Faría, Fornaris & Ruiz,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

A Brunilda Sepúlveda Pérez se le extraviaron cinco quincuagésimos del billete de la lotería de Puerto Rico, número 32119, correspondiente al sorteo extraordinario a celebrarse el día primero de julio de 1951. Dichos quincuagésimos fueron encontrados en la calle H, núm. 3 de Caparra Heights, donde reside Brunilda, por el joven vendedor de periódicos Pedro Pagán Soto quien los retuvo en su poder. El sorteo se celebró en la fecha señalada resultando el número 32119 agraciado con el primer premio. Dos días después el Negociado de Pagaduría de la Lotería, en presencia de Brunilda, pagó a Pedro Pagán Soto, portador de los cinco quincuagésimos extraviados, el premio de $15,000 que correspondía a éstos. Brunilda se querelló al fiscal de San Juan y este funcionario inició una investigación de los hechos. En el curso de esta investigación el padre de Pagán Soto entregó al fiscal los $15,000 que su hijo había cobrado en el Negociado de la Lotería.

El fiscal encontró que Pedro Pagán Soto no había cometido delito. En vista de que tanto Pagán como Brunilda alegaban ser cada uno de ellos dueño del premio de $15,000, el fiscal consignó dicha suma en la secretaría del Tribunal de Distrito, hoy Superior, para que éste resolviera la controversia entre las partes. Una vez hecha esta consignación, compareció por escrito Brunilda Sepúlveda Pérez alegando ser la única y legítima dueña de la suma consignada y negando

que Pagán Soto tuviera derecho alguno a la misma. Terminó su escrito solicitando del tribunal que así lo decretara y que ordenara al secretario le entregara la totalidad de dicha suma. Compareció entonces por escrito Pedro Pagán Soto oponiéndose a la solicitud de Brunilda. En dicho escrito de oposición alegó, en síntesis, que él tenía la posesión legal de la suma depositada; que si accedió a que el fiscal depositara dicha suma en la secretaría del tribunal fué para "dar oportunidad a cualquier persona que se creyere con derecho a reclamación alguna"; que teniendo el opositor la posesión y título de la suma pagádole por el Negociado de la Lotería, no procedía dilucidar la controversia en un procedimiento especial, sino que Brunilda debía acudir a un recurso ordinario para reclamar sus derechos; que la corte no había adquirido jurisdicción sobre el opositor. Terminó su escrito con súplica de que se declarara de plano sin lugar la solicitud de Brunilda y que en caso de que el tribunal deseara continuar el procedimiento en forma contenciosa, ordenara que mientras tanto la cantidad consignada le fuera entregada a él.

En vista de estos dos escritos, el tribunal a quo ordenó que Brunilda Sepúlveda y Pedro Pagán Soto litigaran entre sí sus reclamaciones opuestas sobre los $15,000 consignados por el fiscal y al efecto señaló fecha para la celebración de una vista plenaria en la que ambas partes producirían sus pruebas.(1) Después de celebrarse dicha vista y haber las

---

(1) La parte dispositiva de la orden del tribunal lee así:

"Se ordena, en consecuencia, a los reclamantes Brunilda Sepúlveda Pérez y Pedro Pagán Soto que litiguen entre sí sus reclamaciones opuestas sobre los Quince Mil Dólares ($15,000) consignados en este caso por el Fiscal Auxiliar del Distrito Ernesto Mieres Calimano, y se señala la sesión del día 2 de noviembre de 1951 a las nueve de la mañana para que ambos reclamantes comparezcan ante este tribunal para la celebración de una vista plenaria, en la que podrán ofrecer las pruebas de que intenten valerse en apoyo de sus respectivas pretensiones.

"En dicho día y hora, al ser llamado el caso para vista, el tribunal oirá la contención de cada reclamante y admitirá las pruebas pertinentes que cada uno aporte en apoyo de su reclamación, y en definitiva proveerá sobre la pertenencia de la suma consignada lo que mejor proceda en derecho."

partes ofrecido prueba documental y testifical, la corte a quo dictó sentencia declarando con lugar la reclamación de Brunilda Sepúlveda Pérez y en su consecuencia ordenando la entrega a ella de la totalidad de los $15,000 depositados en la secretaría. Contra dicha sentencia Pagán Soto ha interpuesto el presente recurso de apelación. Imputa a la corte a quo haber cometido error (1) "al conceder derecho a Brunilda Sepúlveda sin que haya ley alguna que proteja su reclamación; "(2) "al no decidir que de poderse solicitar la entrega de la suma consignada, Brunilda Sepúlveda no tiene *status* legal para hacerlo;" (3) al no resolver que de tener Brunilda Sepúlveda algún derecho, éste no pasa del valor de los cinco quincuagésimos en el momento de ser encontrados por el apelante; (4) al no decidir que Brunilda Sepúlveda perdió por abandono la posesión del billete de la lotería; y (5) al permitir el procedimiento de *interpleader* en este caso.

Discutiremos conjuntamente los errores primero, tercero y cuarto ya que los mismos están relacionados entre sí y constituyen la médula de este recurso.

Arguye el apelante que este caso se rige por la ley especial creando la Lotería Oficial conocida con el nombre de "Lotería de Puerto Rico",(2) y no por las disposiciones del Libro Tercero del Código Civil, especialmente los arts. 555 y siguientes (ed. 1930) que tratan sobre el hallazgo de cosas muebles. Arguye además que la apelada perdió la posesión del billete premiado, de haberla tenido en alguna ocasión, por abandono del mismo.

No tiene razón. La Ley de la Lotería Oficial dispone en su art. 12 que "No se satisfará premio alguno sin la previa presentación del billete que lo obtenga y la determinación de su legitimidad". El Reglamento de la Lotería contiene una disposición similar a ésta y además establece que los billetes de la lotería "se considerarán valores al portador, por tanto, no se reconocerá como dueño de un billete premiado a otra

---

(2) Ley núm. 465 de 15 de mayo de 1947—Leyes de Puerto Rico de ese año, pág. 1023.

persona que aquélla que lo posea y lo presente al cobro". Regla II A, párrafo cuarto. "El Negociado de la Lotería,— dice la Regla VII, en su párrafo noveno—las colecturías de rentas internas de los municipios de la Isla y los agentes no reconocerán como dueño de un billete a otra persona que aquélla que lo posea y lo presente al cobro." Además los billetes de la lotería llevan impreso al dorso lo siguiente: "Siendo los billetes valores al Portador, los premios se pagarán al que los presentare al cobro. Los premios caducan a los 6 meses." Fundándose en estas disposiciones de la ley y del reglamento, el apelante sostiene que como él tenía la posesión del billete premiado, lo presentó al cobro y le fué pagado, su título como dueño del premio quedó definitivamente establecido, sin que le pueda ser disputado por ninguna otra persona.

El apelante está equivocado. La ley creando la lotería regula las relaciones jurídicas entre los jugadores de billetes y el gobierno. A los fines del pago de los premios no se reconoce más dueño que al poseedor del billete que lo presentare al cobro. Esto no implica, sin embargo, que el pago del premio al tenedor o portador del billete premiado, constituya una adjudicación definitiva, absoluta e inatacable, del derecho dominical sobre dicho premio en perjuicio de tercero. Para el Negociado de la Lotería, sí lo es. No obstante, una tercera persona que alegue ser la legítima dueña del billete, o que alegue tener alguna participación en el mismo, no está impedida de establecer su reclamación ante los tribunales. La Ley de la Lotería no tuvo el propósito, ni de hecho ha derogado expresa o implícitamente las disposiciones del Código Civil referentes al derecho de propiedad. Es pues a los preceptos de dicho Código donde debemos acudir para resolver el problema planteado en este recurso.

Es un hecho incontrovertido que el apelante adquirió la tenencia o posesión física de los cinco quincuagésimos del billete de la lotería número 32119 mediante su hallazgo. Tampoco hay controversia en cuanto a que dichos quincuagésimos se le extraviaron a la apelada, quien tenía la posesión de los

mismos. Son, por tanto, de aplicación a estos hechos, contrario a lo que sostiene el apelante, los arts. 555 y 556 del Código Civil (ed. 1930). ([3]) Conforme disponen dichos artículos, el que encontrare una cosa mueble ([4]) que no sea tesoro, debe restituirla a su anterior poseedor. Si éste no fuere conocido, deberá consignarla inmediatamente en poder del alcalde del pueblo donde se hubiere verificado el hallazgo. El alcalde hará publicar el hallazgo por dos semanas consecutivas y si pasaren dos años a contar desde el día de la segunda publicación sin haberse presentado el dueño, se adjudicará la cosa encontrada o su valor, al que la hubiese hallado. Hemos visto que el apelante en este caso no restituyó

([3]) Dichos artículos disponen:

"Artículo 555.—El que encontrare una cosa mueble que no sea tesoro, debe restiuirla a su anterior poseedor. Si éste no fuere conocido, deberá consignarla inmediatamente en poder del alcalde del pueblo donde se hubiere verificado el hallazgo.

"El alcalde hará publicar éste en la forma acostumbrada dos semanas consecutivas.

"Si la cosa mueble no pudiere conservarse sin deterioro o sin hacer gastos que disminuyan notablemente su valor, se venderá en pública subasta luego que hubiesen pasado ocho días desde el segundo anuncio sin haberse presentado el dueño, y se depositará su precio.

"Pasados dos años a contar desde el día de la segunda publicación, sin haberse presentado el dueño, se adjudicará la cosa encontrada, o su valor, al que la hubiese hallado.

"Tanto éste como el propietario estarán obligados, cada cual en su caso, a satisfacer los gastos.

"Artículo 556.—Si se presentare a tiempo el propietario, estará obligado a abonar, a título de premio, al que hubiese hecho el hallazgo, la décima parte de la suma o del precio de la cosa encontrada. Cuando el valor del hallazgo excediese de 500 dólares, el premio se reducirá a la vigésima parte en cuanto al exceso."

([4]) No tenemos duda de que los billetes de la lotería son bienes muebles. Comentando el art. 615 del Código Civil Español, equivalente al 555 del nuestro, dice Manresa, tomo 5, sexta ed., pág. 77, lo siguiente: "Los términos empleados en el art. 615, primer párrafo, abarcan, por su generalidad, toda clase de personas y toda especie de cosas muebles. Estimamos que la palabra *cosa* ha de entenderse sinónima de bienes. Son bienes muebles todos los no comprendidos en el art. 334 del Código, [equivalente al 263 del nuestro] y, por lo tanto, los semovientes." El art. 263 de nuestro Código, define lo que son bienes inmuebles, indicándolos específicamente sin que en la enumeración que se hace de dichos bienes se encuentren los envueltos en este litigio.

los billetes encontrados a su anterior poseedor ni los consignó en poder del alcalde sino que por el contrario se apropió de ellos. Su posesión, por tanto, no es de buena fe, ni equivale a título. Hasta tanto transcurriera el término legal para la prescripción extraordinaria, el apelante no podía adquirir el dominio sobre dichos billetes. "El inventor del objeto debe restituirlo a su dueño, si es conocido, o consignarlo en poder del Alcalde, si no lo es; pero ¿y si no lo hace?

"Ya dijimos en el comentario del art. 464 que, en tal caso, se exige la prescripción para poder adquirir el inventor o un tercero, y aquél necesita poseer, por regla general, por el término extraordinario de seis años, *por no existir buena fe*, ni ser, por lo mismo, equivalente al título su posesión, salvo, además, la disposición del art. 1956, como tendremos ocasión de comprobar al examinar la materia de la prescripción. En tal caso, *no hay ocupación jurídica: hay sólo una ocupación material*, como dice el art. 438, que sólo puede producir la adquisición de la posesión, y nunca, sin el transcurso legal, la adquisición del dominio." (Bastardillas nuestras.) 5 Manresa, Código Civil, pág. 75.(⁵) Véase además, Scaevola, Código Civil, tomo 8, pág. 594, (5ta. ed.).

El apelante arguye que tratándose de cosas muebles *abandonadas*, él adquirió los billetes por la ocupación conforme lo dispone el art. 550 del Código Civil. "Se adquieren por la ocupación—dice el referido artículo—los bienes apropiables por su naturaleza que carecen de dueño, como los animales que son objeto de la caza y pesca, el tesoro oculto y las cosas muebles abandonadas." Su error consiste en dar carácter de cosa mueble abandonada a lo que en realidad no lo es. Dejemos que el comentarista señor Manresa se exprese sobre este particular:

"Con arreglo a la base 14, los arts. 615 y 616 desenvuelven los principios aplicables en general a las cosas muebles *abandonadas,* pero a aquellas que se encuentran abandonadas sin que conste expresamente la voluntad en el dueño de desprenderse de ellas.

---

(⁵) Sexta ed.

Son simplemente cosas que se encuentran sin poseedor actual y material. El abandono en el sentido de desapoderarse de una cosa, de renunciar al dominio sobre ella, de romper toda relación jurídica con la misma, ha de ser expreso, claro y evidente. No siendo así, la ley presume que la cosa abandonada ha sufrido extravío, que tiene un dueño; en suma, que el abandono no ha sido voluntario o intencional.

"Por esto la persona que las ocupa al encontrarlas, no adquiere instantáneamente el dominio. Todos los anuncios, todas las formalidades, todos los plazos señalados, se destinan exclusivamente a hallar o encontrar ese dueño, todo se exige en beneficio de él. Así es que desde el momento en que ese dueño se presenta dentro de los dos años, ha de restituírsele lo que no ha dejado de pertenecerle. Pero si los años transcurren y el dueño no reclama, la ley se convence de que, o no existe dueño anterior, o éste ha abandonado su derecho, y entonces es cuando declara rota la relación anterior de dominio y adjudica la cosa a aquel que la encontró.

"El efecto de la ocupación es, pues, condicional; la adjudicación al inventor significa la adquisición por éste del dominio, y en ese momento es cuando realmente surte su efecto propio el título originario de la ocupación." (5 Manresa, Código Civil, págs. 72, 73.)

Y a la pág. 74 del mismo tomo, se expresa así:

"Hemos dicho que la ley parte del supuesto de que las cosas muebles que se encuentran abandonadas tienen un dueño conocido o desconocido que, o no quiso abandonarlas o lo hizo contra su voluntad. Pero, ¿y si consta expresamente la voluntad de desprenderse del dominio? El Código no se ocupa de este particular en el art. 615, y preciso es confesar que no es frecuente, ni aún natural, ese acto aislado. Lo regular y ordinario es que conste al mismo tiempo la voluntad de ceder las cosas en beneficio de otras personas, determinadas expresa o tácitamente."

En el presente caso quedó plenamente confirmada por la prueba, la presunción de que el dueño de los billetes no quiso abandonarlos o lo hizo en contra de su voluntad. En otras palabras, que se trata de un extravío.

■ Carece de méritos la contención del apelante al efecto de que de tener la apelada algún derecho, éste no pasa

del valor de los cinco quincuagésimos en el momento de ser encontrados. Es el apelante, por no haberse conducido de conformidad con lo prescrito por la ley consignando el billete en poder de la autoridad legítima, quien ha perdido el premio que le concede el art. 556 y que el propietario de la cosa extraviada venía obligado a abonarle. Tratando de determinar cuál sería el valor del premio a que tiene derecho la persona que se encuentre un billete de la lotería, Scaevola formula la siguiente regla: "Los derechos del que hubiere encontrado un billete de la lotería se subordinarán a los resultados de la extracción." Y añade:

"Esto ha de entenderse siempre que el autor del hallazgo se conduzca de conformidad con lo prescrito por la ley y consigne el billete en poder de la Autoridad legítima, designada por el Código, o se le restituya a su anterior poseedor, si éste le fuere conocido; porque si retuviese en su poder el billete y tratase de cobrarle como cosa propia, creemos que perderá todo derecho a la cuota proporcional de la décima o vigésima parte del importe del premio, según éste exceda o sea inferior a la suma de 2.000 pesetas.

"Un artículo de la Instrucción general de Loterías aprobada por Real decreto de 25 de febrero de 1893, el undécimo declara que 'los billetes de lotería son documentos al portador, por cuyo motivo no se reconoce como dueño de ellos más que a la persona que los presente, sin perjuicio del derecho de tercero, cuya declaración corresponde a los Tribunales ordinarios.' ¿Quiere este artículo de la Instrucción significar que por el mero hecho de poseer el billete se confiere la propiedad del mismo? En manera alguna, y así lo demuestra la reserva que se formula en beneficio de los derechos del dueño, siempre que los declaren los Tribunales ordinarios.

"Aparte de que si interpretáramos, sin evitar el absurdo, el susodicho artículo, plegándonos estrictamente a su defectuosa redacción, tendríamos que sancionar con el visto bueno de la legalidad más absoluta el acto del que, habiéndose encontrado un billete premiado, lo hiciese efectivo y se apropiase y distrajese el importe del premio. El hecho de ser el billete de lotería un documento al portador, no es suficiente para borrar las irregularidades de un modo adquisitivo vicioso. Es factible, por tanto, que se presente el caso práctico a que venimos refirién-

donos, y que haya necesidad de aplicar el art. 616 en la forma y con sujeción a la regla que acabamos de exponer." (11 Scaevola, 5ª ed., págs. 438 y 439.)

Estos tres errores no fueron cometidos. Tampoco el segundo y el quinto. La prueba no contradicha y creída por la corte a quo estableció que un compañero de trabajo entregó a Brunilda Sepúlveda Pérez 30 quincuagésimos del billete número 32,119 para que ésta a su vez lo distribuyera en quincuagésimos entre varios compradores. Diez de esos quincuagésimos serían para la propia Brunilda y cinco para su hermano Daniel Gonzalo Sepúlveda. Distribuyó Brunilda quince quincuagésimos y retuvo en su poder los diez suyos y los cinco de Gonzalo. Estos últimos habían sido separados de los otros diez. Fué entonces cuando a Brunilda se le extraviaron los cinco quincuagésimos encontrados por el apelante. La prueba demuestra además que Brunilda cobró el premio correspondiente a diez quincuagésimos y que luego entregó a su hermano Daniel Gonzalo, $15,000 que le correspondían a los cinco quincuagésimos de éste. En el supuesto de que los quincuagésimos extraviados fueron los de Daniel Gonzalo y no los de Brumilda, no hay duda alguna de que ésta quedó subrogada en los derechos de aquél al pagarle los $15,000. Siendo ello así, no podemos convenir con el apelante en que Brunilda carecía de personalidad (*standing*) para establecer la presente reclamación. Además, no vemos en qué pueda mejorar la posición del apelante el hecho de que los quincuagésimos extraviados pertenecieran a Gonzalo y no a Brunilda.

También es forzoso rechazar la alegación del apelante en el sentido de que la corte a quo no adquirió jurisdicción sobre su persona. Su comparecencia voluntaria, según consignamos al principio de esta opinión, fué suficiente para concederle jurisdicción a la corte sentenciadora. Tampoco entraremos a discutir si fué correcto o no el procedimiento de *interpleader* ordenado por dicha corte. Llámesele acción reivindicatoria, *interpleader* o acción personal, es lo cierto

que las partes tuvieron su día en corte, habiéndose celebrado un juicio plenario con amplia oportunidad para todos de presentar su prueba y alegar sus respectivos derechos. El apelante no nos ha llamado la atención hacia algún perjuicio que haya sufrido por razón del procedimiento seguido en este caso ante la corte sentenciadora.

*No habiéndose cometido ninguno de los errores señalados por el apelante, la sentencia apelada será confirmada.*