GABRIEL FUENTES, JR., demandante y recurrido, *v.* FULANO DE TAL, ALEJO CORTÉS, RAMÓN FIGUEROA Y JENARO REYES GONZÁLEZ, demandados y recurrentes.

Número: 12102   Resuelto: 14 de febrero de 1962

*Luis Vizcarrondo Coronado* y *Romany & Romany,* abogados de los recurrentes; *Jorge Sous,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Alejo Cortés, Ramón Figueroa y Jenaro Reyes González adquirieron cinco sexagésimos de un billete de la Lotería de Puerto Rico que resultó agraciado con el primer premio en el sorteo efectuado el 25 de marzo de 1956. Gabriel Fuentes, Jr., demandante y recurrido, alega ser dueño de las referidas participaciones por habérselas comprado a un agente de la lotería e instó el presente pleito para recobrar los referidos sexagésimos.

El caso fue sometido mediante una estipulación que a continuación se transcribe en su parte pertinente:

"1. Que el demandante Gabriel Fuentes, Jr. el día 24 de marzo de 1956, alrededor del mediodía adquirió por compra a doña Ana María Valdés Tous el billete completo número 31,345 correspondiente al sorteo ordinario [sic] número 874 de la Lotería de Puerto Rico que se celebraría durante la mañana del domingo siguiente, o sea, del día 25 de marzo de 1956; que de dicho billete regaló los sexagésimos números 39 y 40 al señor Ramos y conservó los 58 sexagésimos restantes; que después se dirigió hacia el muelle a inspeccionar una lancha de su propiedad, y a su regreso a las seis de la tarde notó que se le habían extraviado dichos 58 sexagésimos; que el billete de referencia resultó agraciado con el primer premio en el sorteo celebrado al siguiente día.

"2. Que los demandados Alejo Cortés, Ramón Figueroa y Jenaro Reyes González el día 24 de marzo de 1956, alrededor de las 8:30 de la noche adquirieron por compra a don Martín Rondón 5 sexagésimos del referido billete número 31,345; en la forma siguiente:

"Alejo Cortés adquirió dos sexagésimos, Ramón Figueroa, adquirió otros dos sexagésimos, y Jenaro Reyes González adquirió otro sexagésimo por la cantidad de veinticinco centavos cada sexagésimo; que los demandados adquirieron dichos sexagésimos de buena fe y por valor nominal de dichos sexagésimos e ignorando por completo que al demandante Gabriel Fuentes, Jr., se le hubiese extraviado dicho billete de la lotería y creyendo de buena fe que Martín Rondón era el dueño de dichos sexagésimos y con derecho a venderlos; que Martín Rondón se dedica habitualmente a lavar carros."

Así, la cuestión que tuvo ante su consideración el juez de instancia fue determinar como cuestión de derecho si una persona que ha comprado un billete de la lotería y se le extravía puede reivindicarlo de otro que lo obtuvo mediante el pago del precio correspondiente. La corte a quo declaró con lugar la demanda y contra esa sentencia se recurrió ante nos.

En ocasión anterior, *Mieres, Fiscal* v. *Pagán*, 76 D.P.R. 699 (1954), resolvimos que el comprador de un billete de la lotería extraviado podía reivindicarlo de una persona que se lo había encontrado. Este caso presenta la cuestión de si puede reivindicarlo de quien lo adquirió mediante compra.

Los recurrentes demandados en el pleito sostienen que si bien el caso de *Mieres* dejó establecido que se podía reivindicar un billete de la lotería de quien lo encontró por haberse extraviado, no procede la reivindicación contra quien lo adquirió pagando su precio. Se fundan en que los billetes de la lotería son valores al portador.

En *Mieres* dijimos que "Es pues a los preceptos de dicho Código [Civil] donde debemos acudir para resolver el problema planteado en este recurso." Allí acudiremos para resolver el que éste plantea.

El art. 393 del Código Civil—31 L.P.R.A. sec. 1479— dispone:

"La posesión de los bienes muebles adquiridos de buena fe equivale al título. Sin embargo, el que hubiese perdido una cosa mueble o hubiese sido privado de ella ilegalmente, podrá reivindicarla de quien la posea.

"Si el poseedor de la cosa mueble perdida o sustraída la hubiese adquirido de buena fe en venta pública, no podrá el propietario obtener la restitución sin reembolsar el precio dado por ella.

"En cuanto a las cosas adquiridas en la bolsa, feria o mercado, o de un comerciante legalmente establecido y dedicado habitualmente al tráfico de objetos análogos, se estará a lo que dispone el Código de Comercio, Título 10."

En *García* v. *Sabino*, 19 D.P.R. 279 (1913), sostuvimos que la posesión de los bienes muebles adquiridos de buena fe equivale al título, pero no al dominio en el caso en que el vendedor no sea el verdadero dueño y que para adquirir el dominio en tal caso se necesita además la posesión continuada por el período de tres años.

Castán, en el tomo 2 de su *Derecho Civil Español, Común y Foral*, 6ta. ed., 1943, a la pág. 52 dice: "En conclusión, y según este criterio, que nos parece el más exacto, la posesión, aun adquirida de buena fe, de cosas muebles *perdidas* o *sustraídas*, no excluye la acción reivindicatoria, y, por consiguiente, no extingue el derecho de propiedad." (Énfasis en el original.)

Laurent en *Principios de Derecho Civil Francés*, tomo 32, pág. 653, manifiesta al comentar el art. 2279 del Código Francés, que se considera precedente inmediato del art. 393 nuestro, dice: "¿La reivindicación se admite contra los poseedores de buena fe? Sí, y sin ninguna duda. El art. 2279 no distingue y no había para qué distinguir; si la ley permite reivindicar las cosas perdidas o robadas es por respeto al derecho de propiedad. Debía, pues permitir la reivindicación por sólo que se trata de una cosa robada o perdida. El art. 2280 confirma esta interpretación; supone que el tercer poseedor es de buena fe por razón de las circunstancias en las que compró la cosa; aunque la haya comprado en un remate público o a un comerciante de cosas iguales no puede oponer su buena fe a la acción del propietario; sólo que éste no puede en este caso, reivindicar más que con cargo de reembolsar al posesor el precio que éste pagó."

Al mismo efecto, 4 Manresa, *Comentarios al Código Civil*, 301 (5ta. ed., 1931); 3 Sánchez Román, *Derecho Civil Español, Común y Foral*, 462 *et seq.* (2da. ed., 1900); 3 Planiol-Ripert, *Tratado de Derecho Civil Francés*, 317 *et seq.* (1942); Colin y Capitant, *Curso Elemental de Derecho Civil*, T. 2, Vol. 2, pág. 963 (2da. ed., 1942); 1 De Buen-Bonet, *Derecho Civil Común*, 234; De Diego, *Instituciones de Derecho Civil Español*, pág. 385 (1941); 1 *Diccionario de Derecho Privado*, págs. 3–4 (ed. 1954); 2 Borrell y Soler, *Derecho Civil Español*, § 147, pág. 206 (ed. 1955); Machado, *Comentarios al Código Civil*, 248 (1950); Sentencia del Tribunal Supremo de España de 13 de enero de 1926 (169 Jurisprudencia Civil 151). Valverde, *Tratado de Derecho Civil Español*, pág. 333, escolio 4 (1936); 1 Santamaría, *Comentarios al Código Civil*, 492 *et seq.* (1958); 3 Núñez, *Código Civil*, 417–422 (La Habana, 1935); 1 Arango, *El Código Civil*, 194 (La Habana, 1926); Hernández-Gil, *El Giro de la Doctrina Española en Torno al Artículo 464*, 28 Revista de Derecho Privado (1944) pág. 491;

Hernández-Gil, *De Nuevo sobre el Artículo 464 del Código Civil*, 29 Revista de Derecho Privado (1945) pág. 413. ■■■

Vemos, pues, que el art. 393 tal cual lo interpretan los comentaristas y de acuerdo con el caso de *García* v. *Sabino*, establece que el propietario de un bien mueble perdido o sustraído tiene derecho a recobrar la cosa perdida o sustraída sin que sea necesario considerar la buena o mala fe del adquirente. Aun cuando el tercer adquirente logre la posesión de buena fe, el verdadero dueño no está impedido de ejercitar la acción reivindicatoria correspondiente. La buena fe sólo tiene el efecto de reducir a tres años el tiempo necesario para adquirir por prescripción. Manresa al considerar esta cuestión sostiene que en situaciones de pérdida o extravío de una cosa mueble entran en juego tres términos prescriptivos diferentes que tiene el verdadero dueño para reivindicar la cosa perdida o extraviada. Si el que encuentra la cosa perdida cumple con las formalidades del art. 555 entregando el bien mueble al alcalde, si transcurridos dos años de la entrega no ha habido reclamación entonces el que la entregó pasa a ser dueño absoluto de la cosa. Si no se cumplen con las formalidades antes referidas, el dueño tiene seis años para instar la acción de acuerdo con el art. 1855 del Código Civil y si la cosa pasa a un tercero de buena fe, entonces el término prescriptivo se reduce a tres años de acuerdo con lo preceptuado en dicho artículo. Véase, 4 Manresa, *op. cit.*, págs. 303–304, comentando los artículos correspondientes del Código Español. Sols, Prescripción Adquisitiva de Bienes Muebles, 34 Rev. Der. Privado, pág. 119 (1950). ■■■

Se ha aclarado que el uso del vocablo *título* en la disposición del art. 393 al efecto de que "la posesión de los bienes muebles adquiridos de buena fe equivale al título." quiere decir título a los fines de la prescripción y no título para la propiedad. 11 Scaevola, *Comentarios al Código Civil*, pág. 588 *et seq.*; Colin y Capitant, *Curso Elemental de Derecho Civil*, 2da. ed.,

tomo 2, pág. 1,008 (1942). 3 Puig Brutau, *Fundamentos de Derecho Civil*, pág. 99 (1953) ; 4 Manresa, *op. cit.*, pág. 229; De Buen-Bonet, *op. cit.*, pág. 234. Y aun los que sostienen que el concepto título del art. 393 es de propiedad, reconocen la excepción a que se refiere la proposición segunda del párrafo primero de dicho artículo que sanciona la reivindicación en los casos de pérdida y privación ilegal. En otras palabras, en estos supuestos no admiten la prescripción instantánea. Hernández-Gil, *El Giro de la Doctrina Española en Torno al Artículo 464*, 28 Revista de Derecho Privado (1944) pág. 491. ▮

Así vemos que el poseedor de buena fe no se convierte en propietario hasta transcurridos tres años de haber adquirido la posesión de la cosa mueble. Y ya hemos sostenido que los billetes de la lotería se clasifican entre los bienes muebles. A ese efecto dijimos en *Mieres*, en el escolio 4 que aparece a la pág. 705:

"No tenemos duda de que los billetes de la lotería son bienes muebles. Comentando el art. 615 del Código Civil Español, equivalente al 555 del nuestro, dice Manresa, tomo 5, sexta ed., pág. 77, lo siguiente: 'Los términos empleados en el art. 615, primer párrafo, abarcan, por su generalidad, toda clase de personas y toda especie de cosas muebles. Estimamos que la palabra *cosa* ha de entenderse sinónima de bienes. Son bienes muebles todos los no comprendidos en el art. 334 del Código, [equivalente al 263 del nuestro] y, por lo tanto, los semovientes.' El art. 263 de nuestro Código, define lo que son bienes inmuebles, indicándolos específicamente sin que en la enumeración que se hace de dichos bienes se encuentren los envueltos en este litigio."

Al mismo efecto, 11 Scaevola, *op. cit.*, pág. 395 *et seq.*

Pasamos ahora a considerar la cuestión levantada por los recurrentes al efecto de que los billetes de la lotería son títulos al portador y en ese sentido el reglamento promulgado por el Secretario de Hacienda dispone que "los billetes de la lotería se considerarán valores al portador, y, por tanto, no se recono-

cerá como dueño de un billete premiado a otra persona que aquella que lo posea y lo presenta al cobro". 15 R. & R. P. R. § 126–24. ▇

En *Mieres* dispusimos de este problema cuando expresamos:

"Arguye el apelante que este caso se rige por la ley especial creando la Lotería Oficial conocida con el nombre de 'Lotería de Puerto Rico', y no por las disposiciones del Libro Tercero del Código Civil, especialmente los arts. 555 y siguientes (ed. 1930) que tratan sobre el hallazgo de cosas muebles. Arguye además que la apelada perdió la posesión del billete premiado, de haberla tenido en alguna ocasión, por abandono del mismo.

"No tiene razón. La Ley de la Lotería Oficial dispone en su art. 12 que 'No se satisfará premio alguno sin la previa presentación del billete que lo obtenga y la determinación de su legitimidad'. El Reglamento de la Lotería contiene una disposición similar a ésta y además establece que los billetes de la lotería 'se considerarán valores al portador, por tanto, no se reconocerá como dueño de un billete premiado a otra persona que aquélla que lo posea y lo presente al cobro'. Regla II A, párrafo cuarto. 'El Negociado de la Lotería,—dice la Regla VII, en su párrafo noveno—las colecturías de rentas internas de los municipios de la Isla y los agentes no reconocerán como dueño de un billete a otra persona que aquélla que lo posea y lo presente al cobro.' Además los billetes de la lotería llevan impreso al dorso lo siguiente: 'Siendo los billetes valores al Portador, los premios se pagarán al que los presentare al cobro. Los premios caducan a los 6 meses.' Fundándose en estas disposiciones de la ley y del reglamento, el apelante sostiene que como él tenía la posesión del billete premiado, lo presentó al cobro y le fue pagado, su título como dueño del premio quedó definitivamente establecido, sin que le pueda ser disputado por ninguna otra persona.

"El apelante está equivocado. La ley creando la lotería regula las relaciones jurídicas entre los jugadores de billetes y el gobierno. A los fines del pago de los premios no se reconoce más dueño que al poseedor del billete que lo presentare al cobro. Esto no implica, sin embargo, que el pago del premio al tenedor o portador del billete premiado, constituya una adjudicación definitiva, absoluta e inatacable del derecho dominical sobre dicho premio en perjuicio de tercero. Para el Negociado de la Lotería,

sí lo es. No obstante, una tercera persona que alegue ser la legítima dueña del billete, o que alegue tener alguna participación en el mismo, no está impedida de establecer su reclamación ante los tribunales. La Ley de la Lotería no tuvo el propósito, ni de hecho ha derogado expresa o implícitamente las disposiciones del Código Civil referentes al derecho de propiedad. Es pues a los preceptos de dicho Código donde debemos acudir para resolver el problema planteado en este recurso." ■

Scaevola discute el problema del hallazgo de un billete de la lotería al comentar los artículos 615 y 616 del Código Civil Español, equivalentes a los artículos 555 y 556 del nuestro, y el papel que juega el hecho de que se consideren en España—al igual que en Puerto Rico—un valor al portador. Manifiesta a este respecto que "el hecho de ser el billete de la lotería un documento al portador, no es suficiente para borrar las irregularidades de un modo adquisitivo vicioso". 11 Scaevola, *op. cit.*, pág. 439. Se podría argüir que la disposición que considera Scaevola en sus comentarios dispone que "los billetes de lotería son documentos al portador por cuyo motivo no se reconoce como dueño de ellos más que a la persona que los presente, sin perjuicio del derecho de tercero cuya declaración corresponde a los tribunales ordinarios"; mientras que la disposición que aparece en nuestro reglamento no hace reserva alguna en cuanto a esa determinación por los tribunales. Consideramos en vista de lo que expusimos al principio de esta opinión, cuando discutimos el alcance del art. 393 del Código Civil, que era innecesario incluir esa salvedad en el reglamento. Así es la ley, y obviamente el reglamento no tenía por qué hacer referencia alguna a esta materia. ■

Los recurrentes levantan una última cuestión: la negociabilidad de los billetes de la lotería. Arguyen que son aplicables a la situación que consideramos las disposiciones de la Ley de Instrumentos Negociables, Ley núm. 17 de 22 de abril de 1930, 19 L.P.R.A. sec. 1, ya que el último párrafo del art. 393 dispone que "[e]n cuanto a las cosas adquiridas en la bolsa, feria o mercado, o de un comerciante legalmente esta-

b'ecido y dedicado habitualmente al tráfico de objetos análogos, se estará a lo que dispone el Código de Comercio, Título 10," y como las disposiciones del Código de Comercio fueron sustituidas por la Ley de Instrumentos Negociables, esta última es la aplicable. Entendemos que ésta no es una interpretación correcta. Aparte del hecho de que los recurrentes no adquirieron los sexagésimos en tal forma que estuvieren comprendidos dentro de las disposiciones del último párrafo del art. 393, la circunstancia de que los artículos del Código de Comercio fueran sustituidos por la Ley de Instrumentos Negociables no hace a ésta aplicable, como pretenden los recurrentes, a los hechos de este caso y menos puede tener el efecto de convertir en instrumentos negociables los billetes de la lotería. Un billete de la lotería obviamente no reune los requisitos que deben recurrir para que se pueda considerar como un instrumento negociable. Ver: Ley de Instrumentos Negociables, 19 L.P.R.A. sec. 2; Britton, *Bills and Notes*, § 12, pág. 50 (1943).

*Se confirmará la sentencia recurrida.*