VICENCIO CRUZ, demandante y recurrido, *v.* MIGUEL DÍAZ SANTIAGO, DIRECTOR DE LA LOTERÍA DE PUERTO RICO y SECRETARIO DE HACIENDA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y recurrentes.

*Número:* R-65-244      *Resuelto:* 31 de marzo de 1967

*J. B. Fernández Badillo, Procurador General,* y *J. F. Rodríguez Rivera, Procurador General Auxiliar,* abogados de los recurrentes; *Arnaldo Sánchez Recio,* abogado del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Éste es un caso en el cual los hechos aparecen probados con precisión casi matemática. No hay controversia alguna sobre los mismos. Además es un caso en el cual el Tribunal Superior hizo justicia y para hacerla ejerció de manera

ejemplar la sana discreción judicial e interpretó y aplicó las Reglas Núm. 1 y Núms. 70 y 71 de Procedimiento Civil dándoles vida y permitiéndoles operar con todo el vigor que su letra y espíritu informan.[1]

Por un período de más de diez años el demandante, Vicencio Cruz, le venía comprando el billete de la lotería Núm. 299 a la Sra. Lester Vda. de Diez, quién es una agente autorizada de la Lotería de Puerto Rico. Anteriormente los billetes estaban divididos en sesenta fracciones y el demandante compraba el billete completo. Cuando el número de fracciones del billete fue aumentado a ochenta el demandante continuó comprando regularmente sesenta fracciones del billete de dicho número. La Sra. Diez vendía el resto del billete a otras personas. Este arreglo era oficial ya que el demandante había inscrito dicho billete en el Negociado de la Lotería por conducto de la agente Sra. Diez y de esa manera se aseguraba que lo podría adquirir en todos los sorteos.

Para el sorteo del 4 de octubre de 1965, como de costumbre, el demandante compró a la Sra. Diez los sesenta pedazos del billete 299 y le pagó con su cheque Núm. 228 de 14 de septiembre de 1965. La Sra. Diez vendió los restantes veinte pedazos a 6 otras personas cuyos nombres no es necesario relacionar aquí, pero que aparecen expresados en la opinión del Tribunal Superior. También allí se expresa el número de pedazos que cada una de esas personas compró.

Los sesenta pedazos o fracciones del billete 299 correspondientes al sorteo del 4 de octubre de 1965 antes mencio-

---

[1] Regla 1. "Estas reglas . . . se interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento."

Regla 70. "Cualquier defecto en la denominación del pleito o en la súplica del remedio, no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba."

Regla 71. "Cuando no se hubiere previsto un procedimiento específico en estas reglas, el tribunal podrá reglamentar su práctica en cualquier forma que no sea inconsistente con las mismas o con cualquier disposición de ley aplicable."

nados que el demandante compró le fueron hurtados el 23 de septiembre de ese año de su negocio, sito en la Avenida Condado Núm. 112 de Santurce, Puerto Rico, hecho que el demandante notificó inmediatamente a la policía y por carta al Negociado de la Lotería. Dicho Negociado le acusó recibo de su comunicación mediante carta del 28 de septiembre de 1965. En el mencionado sorteo de 4 de octubre de 1965 el billete salió premiado con $2,000.00. Mediante carta del 5 de octubre de 1965 el Jefe de la Sección de Pagaduría del Negociado de la Lotería, Sr. Carlos Fonseca, le informó al demandante que "para poder recobrar este premio tendría que interponer un recurso ante un Tribunal competente y probar a satisfacción su derecho al mismo." El Secretario de Hacienda circuló mediante telegrama una orden para que no se pagara dicho billete o fracciones del mismo, sin duda debido al hurto informado al Negociado de la Lotería por el demandante.

El demandante acudió ante el Tribunal Superior mediante una solicitud de *injunction* dirigida contra el Secretario de Hacienda y el Director de la Lotería, solicitando se dictase una orden de *injunction* ordenando al Director del Negociado de la Lotería que se abstuviese de pagar el premio del billete 299 y alegó el peticionario que recurría al procedimiento de *injunction* por no tener otro recurso adecuado en ley.

Los demandados contestaron la petición negando los hechos esenciales e interpusieron dos defensas especiales. Consistente la primera en que el recurso de *injunction* no procede para impedir que un funcionario público cumpla con una actuación autorizada y ordenada por una ley y consistente la segunda en que de acuerdo con el Art. 10 de la Ley de la Lotería el peticionario carece de una causa de acción por quedar para beneficio del gobierno los premios correspondientes a los billetes "extraviados o rotos, o no cobrados."

El Tribunal Superior resolvió que no procedía el recurso de *injunction* pero basándose en la Regla 70 de Procedi-

miento Civil consideró la petición como una acción civil a los efectos de hacer justicia entre las partes y la declaró con lugar. En consecuencia, y habiéndose establecido sin lugar a dudas que el peticionario es el legítimo dueño de sesenta pedazos del billete premiado, ordenó al Director de la Lotería y al Secretario de Hacienda que consignasen en el Tribunal el importe del premio correspondiente a los sesenta pedazos propiedad del demandante para su entrega en su día al mismo. (²) También ordenó el Tribunal Superior al Director de la Lotería que en caso de presentarse cualquier persona a cobrar las fracciones premiadas propiedad del peticionario, dicho Director debe notificar al Tribunal el nombre y dirección de las personas que solicitasen el pago para hacerlas parte en el procedimiento y concederles la oportunidad de ser oídas antes de procederse a la entrega del importe del premio. De transcurrir más de seis meses desde la fecha de efectuado el sorteo del 4 de octubre de 1965 sin que se presentasen otras personas a cobrar dicho premio o a alegar en los tribunales su derecho al mismo, el Tribunal ordenaría el pago de la cantidad consignada a favor del peticionario. (³)

Los demandados-recurrentes solicitaron revisión del fallo del Tribunal Superior y argumentan que el Tribunal no podía conceder el remedio solicitado porque dicho remedio va dirigido a detener una función encomendada por ley al Director de la Lotería y por lo tanto es improcedente el recurso de *injunction*.

█ Es cierto que el *injunction* no procede "para impedir la aplicación u observancia de cualquier ley . . . o el cumpli-

---

(²) No surge problema en cuanto al pago de la parte del premio correspondiente a los restantes veinte pedazos porque están debidamente identificados con sus nombres las seis personas que los compraron y también se conoce el número de pedazos o fracciones que cada una de estas personas compró.

(³) El derecho al cobro de los premios de la lotería caduca a los seis meses de verificado el sorteo correspondiente. 15 L.P.R.A. sec. 122.

miento de cualquier actuación autorizada por ley de la Asamblea Legislativa de Puerto Rico, de un funcionario público, de una corporación pública, o de cualquier empleado o funcionario de dicha corporación o agencia, a menos que se hubiera determinado por sentencia final, firme, inapelable e irrevisable, que dicha ley o actuación autorizada por ley es inconstitucional o inválida." 32 L.P.R.A. sec. 3524(3). Sin embargo, como es indudablemente claro que la intención legislativa de esa disposición no es permitir y proteger el hurto de los premios de la lotería, la misma no hace imposible la operación de las Reglas Núms. 1, 70 y 71 de Procedimiento Civil y el Tribunal de instancia no erró al considerar la petición de *injunction* como una acción civil y al proveer un remedio adecuado para evitar el perjuicio, a cuya evitación el demandante tiene derecho.

▪ Tanto en la función de despacho como al resolver casos en los méritos, los tribunales, cuando es necesario y de justicia hacerlo, hacemos caso omiso de los nombres o títulos mal puestos a los recursos y consideramos los mismos como corresponde. Así por ejemplo, en *Núñez v. Benítez, Rector*, 65 D.P.R. 864 (1946), una petición de *mandamus* fue considerada y resuelta como sentencia declaratoria; en *Mena v. Llerandi*, 70 D.P.R. 176 (1949) una solicitud de *injunction* posesorio fue considerada y resuelta como una acción de deslinde; en *Rivera v. Benítez, Rector*, 73 D.P.R. 377 (1952), una petición de *mandamus* fue considerada y resuelta como una sentencia declaratoria; en *Sucn. Marrero v. Santiago*, 74 D.P.R. 816 (1953), una petición de acción reivindicatoria fue considerada y resuelta como una acción en cobro de dinero.

Los casos de *Mieres v. Pagán*, 76 D.P.R. 699 (1954) y *Fuentes v. Fulano de Tal*, 84 D.P.R. 506 (1962) que citan los demandados no resuelven el caso de autos pues sus hechos son distintos. En *Mieres*, supra, las fracciones del billete se le extraviaron a su dueña y fueron encontrados por

Pagán, quien al resultar premiado el billete cobró el premio. En vista de eso tanto la dueña original como Pagán alegaban ser, cada uno de ellos, dueño del importe del premio. Comparecieron ambos y el Tribunal ordenó que los comparecientes litigaran entre sí sus reclamaciones opuestas sobre los $15,000.00 que habían sido consignados por el fiscal en la Secretaría del Tribunal. Claramente allí expresamos, a la pág. 704, que la ley de la lotería no tuvo el propósito, ni ha tenido el efecto, de derogar las disposiciones del Código Civil referentes al derecho de propiedad y en efecto confirmamos la sentencia del Tribunal Superior otorgando los $15,000.00 a la legítima dueña de los billetes. En su esencia y en su fin justiciero nuestra opinión en *Mieres*, supra, concuerda con el fallo del tribunal de instancia en el caso de autos.

En *Fuentes*, supra, también los hechos son distintos del caso de autos. Allí, como en *Mieres*, el billete se extravió y otras personas compraron fracciones del mismo a una persona que los ofreció en venta. Allí resolvimos, a la pág. 509, siguiendo la doctrina, que "la posesión, aún adquirida de buena fe, de cosas muebles perdidas o sustraídas . . . no extingue el derecho de propiedad." También allí expresamos, a la pág. 514, citando a los tratadistas, que el hecho de ser un billete de la lotería un documento al portador, no es suficiente para borrar las irregularidades de un modo adquisitivo vicioso. Puede verse que también en *Fuentes*, supra, protegimos al legítimo dueño del billete y no permitimos que se frustrara su derecho. Cf. *Silva v. Comisión Industrial*, 91 D.P.R. 891 (1965).

No tiene éxito tampoco para derrotar el fallo del tribunal de instancia, y la justicia que el mismo realiza, la invocación del citado Art. 10 de la Ley de la Lotería, 15 L.P.R.A. sec. 120, el cual dispone que quedarán para beneficio del Gobierno los premios correspondientes a los billetes extraviados o rotos, o no cobrados dentro del término que para

cobrarlos fija la ley. En este caso el billete en cuestión no está ni extraviado ni roto y su dueño hizo la reclamación dentro del término que fija la ley. Nos sorprende esta defensa especial levantada por los demandados en el Tribunal Superior porque ¿qué interés pueden tener ellos en que el demandante, comprobado dueño legítimo del premio, no pudiese cobrarlo? Como bien señala el tribunal de instancia, no sería justo (ni correcto, añadimos nosotros) interpretar dicho Art. 10 en el sentido de que el legislador se propuso que el dueño verdadero de un billete premiado perdiese el importe del premio porque una mano criminal le hubiese hurtado el billete, aun cuando posteriormente se hubiese probado satisfactoriamente el derecho de propiedad del verdadero dueño del billete.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en este caso, en 2 de noviembre de 1965.*