RAMÓN AGUDO CANO y su esposa RAQUEL BAKER, peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE HUMACAO, HON. JUEZ LUIS PEREYÓ, recurridos; ANA MARGARIDA VIUDA DE ITURREGUI ET AL., interventores.

Número: O-67-359 Resuelto: 1ro. de abril de 1968

*Ñido & Berríos* y *José F. Menéndez,* abogados de los peticionarios; *Federico García Veve* y *Vicente Santori Coll,* abogados de los interventores.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau, Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En 12 de febrero de 1962, (¹) Juan R. Zalduondo Grier instó ante la Sala de Humacao del Tribunal Superior, una acción contra los esposos Ramón Agudo Cano y Raquel Baker y/o Hacienda San Miguel Corporation, para reivindicar una finca rústica de 20 cuerdas de terreno sita en el Barrio Pitahaya de Luquillo.

En 20 de septiembre de 1962 la acción fue archivada por falta de diligencia pero en noviembre 8 del mismo año se dejó sin efecto la sentencia de archivo y se reinstaló el caso.

Aunque no se emplazó a los demandados, Hacienda San Miguel Corporation presentó su contestación a la demanda en 30 de diciembre de 1966. En 5 de enero de 1967 los esposos Agudo-Baker presentaron una solicitud de notificación en evicción. Alegaron que aunque no habían sido emplazados se habían enterado del pleito y que como ellos fueron los dueños anteriores de la propiedad en litigio y adquirieron la misma por compra a don Nicolás Iturregui y su esposa solicitaban que de acuerdo con el Art. 1371 del Código Civil (31 L.P.R.A. sec. 3839), se notificara la demanda a la esposa y herederos de, Don Nicolás Iturregui. Alegaron además en esa solicitud que con el deseo de acelerar los procedimientos habrían de radicar, como radicaron inmediatamente después de la solicitud de notificación en evicción, la contestación a la demanda.

En enero 9 de 1967 el Tribunal Superior dictó una orden para que el Secretario expidiera emplazamientos dirigidos a las personas mencionadas en la solicitud de notificación de evicción.

(¹) El demandante inició esta acción en 11 de febrero de 1960 incluyendo como demandados únicamente a los esposos Agudo-Baker. En 12 de febrero de 1960 enmendó su demanda para incluir también como demandada a Hacienda San Miguel Corporation.

Las personas citadas en evicción comparecieron por medio de sus respectivos abogados a los únicos fines de impugnar la citación y los emplazamientos diligenciados.

Luego de oir a las partes, el Tribunal Superior dictó una resolución en 31 de mayo de 1967 dejando sin efecto su orden de citación de 9 de enero de 1967 y declarando nulos los emplazamientos expedidos, "por ser improcedente en derecho la citación en evicción verificada en este caso."

Para fundamentar esta resolución el tribunal expuso (1) que de conformidad con las disposiciones del Art. 1371 del Código Civil, al contestar la demanda los esposos Agudo-Baker antes de que se ordenara la citación en evicción y antes de que se diligenciaran los emplazamientos, dichos esposos renunciaron expresamente su derecho a notificar la demanda de reivindicación al vendedor porque tal notificación debe hacerse antes de contestar la demanda, y (2) que la codemandada Hacienda San Miguel Corporation venía obligada a citar en evicción a su vendedor los esposos Agudo-Baker porque cuando ella contestó la demanda todavía los esposos Agudo-Baker no eran una parte demandada y emplazada en el pleito.

En 8 de septiembre de 1967, el Tribunal Superior declaró sin lugar una moción de reconsideración presentada por los esposos Agudo-Baker.

Para revisar estas resoluciones expedimos sendos autos de *certiorari* a petición respectiva de Hacienda San Miguel Corporation y los esposos Agudo-Baker.

El saneamiento por evicción es un elemento natural del contrato de compra y venta. Manresa, *Comentarios al Código Civil Español*, Tomo X, ed. 1950, págs. 211–212. Dispone nuestro Código Civil en su Art. 1350 (31 L.P.R.A. sec. 3801), que el vendedor está obligado a la entrega y saneamiento de la cosa objeto de la venta y añade en su Art. 1364 (31 L.P.R.A. sec. 3832), que el vendedor "responderá de la evicción aunque nada se haya expresado en el

contrato." No obstante, ese mismo artículo dispone que los contratantes "podrán aumentar, disminuir o suprimir, esta obligación ·legal del vendedor." De suerte que el derecho al saneamiento para el caso de evicción, puede ser renunciado por el comprador. Mas para que esta renuncia sea efectiva y libere de toda responsabilidad al vendedor, deberá estar condicionada a que (1) en el pacto de renuncia no hubiere mediado mala fe por parte del vendedor, y (2) a que el comprador hubiese hecho la renuncia con conocimiento de los riesgos de la evicción y sometiéndose a sus consecuencias. El Art. 1365 (31 L.P.R.A. sec. 3833) declara que será "nulo todo pacto que exima al vendedor de responder de la evicción, siempre que hubiese mala fe de su parte", y el 1366 (31 L.P.R.A. sec. 3834) que cuando "el comprador hubiese renunciado el derecho al saneamiento para el caso de evicción, llegado que sea éste, deberá el vendedor entregar únicamente el precio que tuviese la cosa vendida al tiempo de la evicción, a no ser que el comprador hubiese hecho la renuncia con conocimiento de los riesgos de la evicción y sometiéndose a sus consecuencias."

A este efecto dice Don José Castán Tobeñas, en su obra *Derecho Civil Español, Común y Foral*, Tomo IV, *Derechos y Obligaciones*, página 115, lo siguiente:

"El Código, no obstante, mira con recelo la cláusula por la que el comprador renuncie al saneamiento por evicción, y la restringe en un doble concepto:

1.º Declarando nulo 'todo pacto que exima al vendedor ·de responder de la evicción, siempre que hubiere mala fe de su parte' (art. 1.476).

Parece que la mala fe habrá de consistir en el conocimiento previo (por cierto, difícil de probar) que al tiempo de la venta tenga el vendedor del hecho que da lugar a la evicción y de sus posibles efectos.

· 2.º Estableciendo que para que la renuncia al saneamiento exima al vendedor de todas las obligaciones propias del mismo, es preciso que aquélla la haga· el comprador 'con conoci-

miento de los riesgos de la evicción y sometiéndose a sus consecuencias' (art. 1.477).

Manresa cree que la concurrencia de esta circunstancia dependerá sólo de que el comprador haga en el contrato la declaración solemne correspondiente. Pero *Scaevola,* con criterio más racional a nuestro juicio, entiende que si en lo referente a ·la sumisión la voluntad del comprador ha de hallarse expresada en el contrato, en lo que toca al conocimiento de los riesgos, hay que estar a la prueba que se practique después que la evicción se haya realizado, pues sólo entonces se puede apreciar si la causa a que se debe la misma era o no conocida del adquirente al celebrar el contrato."

Al mismo efecto dice Don José Puig Brutau:

."Aunque no sea nulo el pacto que exima de responsabilidad al vendedor por causa de evicción, la completa exoneración no se logra si no concurren especiales garantías. Para ello se requiere que la renuncia del comprador esté calificado por la circunstancia de tener perfecto conocimiento de los riesgos de la evicción, sometiéndose de manera indudable a sus consecuencias. Como expresa el art. 1.477, 'cuando el comprador hubiese renunciado al derecho al saneamiento para el caso de evicción, llegado que sea éste, deberá el vendedor entregar únicamente el precio que tuviere la cosa vendida al tiempo de la evicción, a no ser que el comprador hubiese hecho la renuncia con conocimiento de los riesgos de la evicción y sometiéndose a sus consecuencias'. Por tanto, la simple renuncia por parte del comprador no es suficiente para que el vendedor deje de estar obligado a entregar el precio que tuviere la cosa vendida al tiempo de la evicción." (José Puig Brutau, *Fundamentos de Derecho Civil,* Tomo II, Vol. II, pág. 194 y siguientes.)

Hemos visto pues, como, a pesar de que el comprador renuncie expresamente en el contrato de compra y venta el derecho al saneamiento, llegado el caso de la evicción, el Código limita el alcance de esa renuncia y la condiciona a la concurrencia de las circunstancias ya señaladas. En el caso de autos los compradores no renunciaron en el contrato su derecho al saneamiento. Sin embargo, el tribunal a quo, considerando que los compradores no siguieron estrictamente

los pasos procesales señalados para la citación en evicción, concluyó de ese hecho que los compradores había renunciado su derecho al saneamiento. Al así hacerlo incurrió en error.

Estos pasos procesales están previstos en el Art. 1371 (31 L.P.R.A. sec. 3839) de nuestro Código Civil. Dispone dicho artículo:

"El comprador demandado solicitará, dentro del término que la Ley de Enjuiciamiento Civil señala para contestar a la demanda, que ésta se notifique al vendedor o vendedores en el plazo más breve posible.

La notificación se hará como la misma ley establece para emplazar a los demandados.

El término de contestación para el comprador quedará en suspenso ínterin no expiren los que para comparecer y contestar a la demanda se señalen al vendedor o vendedores, que serán los mismos plazos que determina para todos los demandados la expresada Ley de Enjuiciamiento Civil, contados desde la notificación establecida por el párrafo primero de esta sección.

Si los citados de evicción no comparecieren en tiempo y forma, continuará, respecto del comprador, el término para contestar a la demanda."

Presupone dicho artículo que el comprador demandado ha sido emplazado. Dentro del término que la ley le señala para contestar la demanda solicitará que se notifique al vendedor o vendedores dentro del plazo más breve posible.

La razón y el fundamento jurídico de la necesidad de la citación del vendedor son bastante obvios. Dice don José Castán Tobeñas, en su obra ya citada, a la página 116, comentando una disposición similar del Art. 1 481 del Código Civil Español, equivalente al 1371 del nuestro, lo siguiente:

"(b) *Notificación al vendedor.*—Esta exigencia, procedente ya del Derecho romano (donde se la llamaba *litem denunciare, auctorem laudare*), tiene su fundamento en la consideración de que el vendedor es quien lógicamente puede tener los medios de defensa contra la demanda de evicción, y si no se le diera la posibilidad de ejercitarlos, sería injusto hacerle sufrir las con-

secuencias de una sentencia condenatoria. Nuestro Código civil considera tan esencial este requisito, que sólo obliga al vendedor al saneamiento cuando 'resulta probado que se le notificó la demanda de evicción a instancia del comprador. Faltando la notificación, el vendedor no estará obligado al saneamiento' (art. 1.481)."

Comentando el mismo artículo del Código Civil Español, don Federico Puig Peña en su obra *Compendio de Derecho Civil*, Tomo III, Volumen 1, página 591 dice:

"Si ya se ha formalizado el intento de reivindicación del terecero—y el comprador ha pagado el precio—, entonces tiene que notificar formalmente al vendedor (31) la demanda de evicción (artículo 1.481). Esta notificación (litis denuntiato) se exige ya desde el Derecho romano (venditor ab emptore denunciatum, ut eum evictionis nomine defenderet) (L. 49 Dig. de Jud. 51), y constituye un caso especial del 'llamamiento de terceros al pleito'. Esta notificación tiene la fundamentación siguiente:

a") Conseguir que el vendedor—puesto que es su obligación—, arregle—si ello es posible—definitivamente la cuestión de los terceros reclamantes. Tienen que conocer, en efecto, la existencia de la demanda reivindicatoria, pues él puede solucionar el conflicto con el evincente. Hasta tal extremo llega esta necesidad, que el Código establece que 'faltando la notificación, el vendedor no estará obligado al saneamiento' (art. 1.481, in fine).

b") Lograr que el vendedor traiga al pleito los medios de defensa de que pueda disponer, y que, habiendo posibilidad de ejercitarlos en la litis, no sería justo hacerle sufrir después los efectos de una sentencia condenatoria, dictada con el silencio de sus posiblemente estimables medios de defensa. Esto no obsta, claro está, para que el comprador, a su vez, deba aportar los elementos de prueba de que disponga (4 diciembre 1909), aun contra el mismo vendedor, si es preciso, si la actitud de éste le resultara, en definitiva, perjudicial (29 abril 1904).

c") Evitar que, en la sucesión de regreso del comprador, pueda el vendedor alegar la excepción de defensa negligente. Por ello, si bien en el caso de que no acuda el vendedor a la litis, no puede declarársele rebelde ni embargársele bienes por su incomparecencia (15 de julio 1912), la doctrina entiende que, en estos

casos, el comprador no está obligado a seguir el pleito en todas sus instancias, pudiendo, por lo tanto, allanarse a la demanda, sin temor de que se le reproche la negligencia de su defensa (32)."

 Puede ocurrir, como efectivamente ocurrió en este caso, que el comprador aunque no haya sido emplazado, comparezca voluntariamente en el pleito quedando sometido a la jurisdicción del tribunal. Ello equivale a la diligencia de su citación personal y entrega de la copia de la demanda. *Franceschi* v. *Sepúlveda*, 27 D.P.R. 118 (1919); *Franco* v. *Corte*, 71 D.P.R. 686 (1950); *Mieres, Fiscal* v. *Pagán*, 76 D.P.R. 699 (1954). En su regla general sobre la citación en evicción el Código no considera este supuesto. Cuando el comprador demandado ha sido emplazado, la ley le concede un término para solicitar la citación del vendedor. Es el mismo término que tiene para contestar la demanda. Dispone la ley además que su término para contestar quedarán en suspenso ínterin no expiren los que para comparecer y contestar a la demanda se señalen al vendedor o vendedores. Obviamente la suspensión de ese término beneficia únicamente al comprador demandado. La ley no le impide renunciarlo y con su renuncia ningún perjuicio causa al vendedor o vendedores citados en evicción. Éstos, una vez citados, disponen del término que le conceden las Reglas de Procedimiento Civil para comparecer y establecer las defensas del título de dominio transmitido al comprador independiente de que éste haya o no contestado la demanda.

 La notificación de la demanda de evicción al vendedor, es la fase preparatoria para el ejercicio por el comprador de la acción de saneamiento en caso de darse la evicción. Lo imperativo no es, como sostienen los interventores, que se siga estrictamente la secuencia de los pasos procesales señalados por el Código Civil en su Art. 1371 aplicando con rigorismo extremo la letra de dicho artículo. Si al desviarse del procedimiento estricto se concede al vendedor la oportu-

nidad de comparecer en el pleito en tiempo oportuno para ya unido al comprador o separadamente establecer la defensa del título de dominio, se cumple con el principio cardinal de que el vendedor no puede ser responsabilizado en la acción de saneamiento sin antes haber sido oído.[2] Esa oportunidad la tienen los interventores en este caso, una vez ordenada y diligenciada su citación. En nada menoscaba o perjudica los derechos de éstos la circunstancia de que los compradores demandados hayan comparecido voluntariamente sometiéndose a la jurisdicción del tribunal y además hayan contestado la demanda antes de transcurrir el término que tenían los interventores para personarse en la acción. No estaban los compradores demandados obligados a esperar que se les emplazara, como insinúan los interventores, pues la demanda de reivindicación estaba sujeta a ser anotada en el registro, cosa que puede crearle inconvenientes y perjuicios a los titulares del inmueble en litigio, aunque por otro lado, la anotación del *lis pendens* sobre la finca de 20 cuerdas beneficiaba a los vendedores citados en evicción toda vez que con ello se impedía que pudiera surgir un tercero registral contra quien no podría prevalecer cualquier defensa de los interventores contra la reclamación del demandante en reivindicación.

Concluimos además, que los esposos Agudo-Baker tienen capacidad para citar en evicción a los interventores. Aparte de que para el 12 de febrero de 1960, fecha en que se radicó la demanda enmendada para incluir a Hacienda San Miguel Corporation como demandada, aquéllos no habían vendido a Hacienda San Miguel Corporation el remanente de la finca que habían adquirido del causante los interventores ya que la segunda venta se hizo el 20 de diciembre de 1960, resultando por tanto que para aquella primera fecha los esposos Agudo-Baker eran el "comprador-deman-

---

[2] Véase *Gaztambide* v. *Sucn. Ortiz*, 69 D.P.R. 315 (1948).

dado" que contempla el Art. 1371 del Código Civil, era innecesario que Hacienda San Miguel Corporation citara en evicción a dichos esposos, por la razón de que ya éstos eran parte demandada en el pleito. Sentencia del Tribunal Supremo de España de 13 de abril de 1929. Al mismo efecto dice don J. Santamaría en su obra *Comentarios al Código Civil*, Tomo II, página 521:

"No será necesaria la citación en evicción cuando el vendedor a quien hubiere de hacerse, fuera ya parte en el juicio, pues no puede tomarse en sentido tan literalmente rigorista la expresión de que la citación en evicción habrá de hacerse 'a instancia del comprador' y la finalidad de la citación en evicción quedará cubierta con el emplazamiento hecho a instancia del demandante."

Ya hemos visto que el diligenciamiento del emplazamiento es innecesario cuando el demandado se somete voluntariamente a la jurisdicción del Tribunal. Concluimos, por lo tanto, que el tribunal a quo erró al resolver que los esposos Agudo-Baker no tenían capacidad para citar en evicción a los interventores.

*Se anularán las resoluciones dictadas por el Tribunal a quo en 31 de mayo de 1967 y 8 de septiembre de 1967 y se devolverá el caso para ulteriores procedimientos.*