CLARA GARCÍA COLÓN, demandante y recurrida, *v.* SECRETARIO DE HACIENDA ET AL., demandados y recurrentes.

*Número:* R-70-210      *Resuelto:* 19 de marzo de 1971

*Gilberto Gierbolini, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados del recurrente; la recurrida no compareció.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En 10 de enero de 1969 Clara García Colón, mayor de edad, viuda, agente de la lotería y vecina de San Lorenzo, Puerto Rico, presentó una declaración jurada en el Tribunal Superior, en la cual hizo constar que se le había extraviado el billete Núm. 43,782 que tenía para el sorteo del 8 de enero de ese año; que el mismo había resultado premiado con $960.00; y que el Negociado de la Lotería le exigió una orden de un tribunal para poder detener el pago de dicho billete,

por lo cual solicitaba que el tribunal dictase dicha orden para satisfacer así el requisito que se le había exigido. En esa misma fecha, el 10 de enero, el Tribunal Superior, vista la referida petición, la declaró con lugar y concedió la orden solicitada.

Habiendo sido consultado por la demandante el Negociado de la Lotería en 18 de febrero de 1969, el Director de dicho Negociado, mediante su carta de 3 de marzo del mismo año contestó como sigue:

"Como usted sabe, los billetes de la lotería son pagaderos al portador. No se puede pagar a menos que el cliente presente las fracciones al cobro. Sin embargo, se han efectuado pagos sin que se presente el billete, pero únicamente cuando hay una resolución de un tribunal competente. El procedimiento corriente es llevar una acción civil ordinaria en que el que pierde la fracción aparece como demandante y el Negociado de la Lotería y el Departamento de Hacienda como demandados."

Habiéndose posteriormente negado el Director del Negociado de la Lotería y el Secretario de Hacienda a pagar el premio a la demandante, ésta presentó en 28 de mayo de 1969 una demanda en el Tribunal Superior contra dicho Director y contra el Secretario de Hacienda solicitando el pago del premio.

En primero de julio de 1969 compareció el Secretario de Justicia mediante una moción de prórroga y luego de expresar que había sido notificado con copia de la demanda y que estaba gestionando de la agencia correspondiente la información necesaria para poder contestarla, solicitó una prórroga de treinta días para contestar. El tribunal le concedió dicha prórroga y otra adicional en 5 de agosto de 1969. En 4 de septiembre de 1969 el Secretario de Justicia presentó una moción de desestimación alegando que el tribunal no había adquirido jurisdicción sobre el demandado y que la demanda no aducía hechos constitutivos de causa de acción. Luego de varios incidentes que no es necesario pormenorizar el Tri-

bunal Superior dictó en 22 de abril de 1970 una resolución que copiada a la letra lee como sigue:

"La demandante en este caso alegó bajo juramento que es agente de la Lotería de Puerto Rico y que se le extravió el billete número 43,782 correspondiente al sorteo del 8 de enero del 1969. Alegó asimismo, que dicho billete salió premiado con $960.00 y no ha sido pagado.

Surge del expediente que la demandante obtuvo una orden del Tribunal para detener el pago de dicho billete premiado.

Celebrada vista al efecto y presentada por el Secretario de Hacienda una contestación, la demandante estableció cumplidamente lo expuesto en su demanda jurada. Se aceptó por el demandado que no tiene conocimiento del haberse efectuado el pago del mencionado premio. Se informó que la práctica administrativa en estos casos es efectuar el pago y si luego resultare pagado, el peticionario devolvería su importe.

Considerando que la demandante es agente de la Lotería y que por tal razón no hay motivo fundado para creer que el Secretario de Hacienda puede ser perjudicado, de pagarse el premio a otra persona, este Tribunal ordena al Secretario de Hacienda y/o al Director de la Lotería de Puerto Rico para que proceda al pago del premio que por $960.00 resultó ganador en el sorteo del 8 de enero del 1969, el billete número 43,782 Serie B, a la aquí demandante la Sra. Clara García Colón.

El pago no creará impedimento legal alguno al demandado para recobrar lo pagado si resultare que dicho premio ha sido pagado a otra persona por él, con antelación a esta Resolución."

En 4 de mayo de 1970 el Secretario de Justicia le escribió al Secretario del Tribunal Superior lo siguiente:

"Hemos recibido copia de la sentencia dictada en el caso de epígrafe en la cual se condena al Estado Libre Asociado al pago de $960.00 a la parte demandante.

A los fines de que el Departamento de Hacienda pueda proceder al pago de la sentencia es necesario que usted nos envíe una copia certificada de la misma. De acuerdo con la ley, ésta está exenta del pago de derecho alguno."

En 6 de mayo del mismo año el Secretario de Justicia presentó una moción de reconsideración para tener efecto *nunc*

*pro tunc* solicitando que el tribunal enmendase el tercer párrafo de su antes mencionada resolución de 22 de abril de 1970 para que dicha resolución en vez de expresar que "la práctica administrativa en estos casos es efectuar el pago y si luego resultare pagado, el peticionario devolvería su importe," expresase que la práctica administrativa "es hacer una liquidación de los billetes premiados y si luego quedare el billete premiado por el cual se reclama sin pagar, entonces la agencia le paga al reclamante." El tribunal mediante su resolución enmendada de 5 de junio de 1970, concedió la enmienda solicitada por el Departamento de Justicia y ordenó al Secretario de Hacienda y al Negociado de la Lotería que pagasen el premio de $960.00 a la demandante.

Luego de todos esos trámites y comparecencias el demandado recurre a nosotros mediante solicitud de revisión y nos solicita que desestimemos la acción por falta de jurisdicción. Señala dos errores. El primero consiste en argüir que el tribunal de instancia erró al asumir jurisdicción ya que no se demandó al Estado Libre Asociado y el segundo en que no se emplazó al Secretario de Justicia.

A la luz de lo anteriormente relatado ambos señalamientos resultan frívolos. Si bien es cierto que la demanda se presentó contra el Secretario de Hacienda y contra el Director del Negociado de la Lotería y no contra el Estado Libre Asociado, la realidad innegable es que para los fines de operar la lotería y de pagar los premios de la misma el Director de la Lotería y el Secretario de Hacienda son agentes del Estado. Pretender lo contrario sería un sofisma increíble. El Estado, como una corporación, es una figura jurídica que se compone de personas, bienes, derechos y deberes, pero por necesidad tiene que actuar, y actúa, a través de personas que son sus agentes. El Estado cobra contribuciones, hace obras públicas, vela por la salud pública, etc. pero lo hace a través de los Secretarios de Hacienda, de Obras Públicas,

de Salud, etc. Nadie ha visto al Estado mezclando cemento ni poniendo una vacuna. Eso lo hacen sus agentes. La lotería de Puerto Rico es operada por el Negociado de la Lotería, Negociado creado por ley en el Departamento de Hacienda. Ley Núm. 465 de 15 de mayo de 1947, Art. 1; 15 L.P.R.A. sec. 111.

■ Tampoco tiene mérito el segundo señalamiento pues, como hemos visto, desde los comienzos de esta acción el Secretario de Justicia quedó enterado de la misma y participó activamente en los trámites del caso en el tribunal de instancia. Solicitó una enmienda a la resolución del tribunal que disponía del caso para que se aclarase lo relativo a la práctica administrativa del Negociado de la Lotería en casos de billetes extraviados y no pagados. Llegó hasta a solicitar del tribunal de instancia una copia certificada de la sentencia "a los fines de que el Departamento de Hacienda pudiese proceder al pago" de la misma.

■ El demandado cita el caso de *Terceiro* v. *División de Hogares Seguros*, 53 D.P.R. 598 (1938). Dicho caso es distinto al de autos. Allí, en las propias palabras del Tribunal, "la única cuestión sustancial envuelta en el caso" era si "¿Erró la corte inferior al resolver que carecía de jurisdicción, por tratarse de una acción dirigida contra El Pueblo de Puerto Rico *y no haber dado éste su consentimiento para ser demandado?*" (Bastardillas nuestras.) Es parte esencial e imprescindible del caso de autos el hecho de que ya el Estado ha dado su consentimiento para ser demandado.

Pero aunque dicho caso fuese idéntico al de autos—y no lo es—no podemos dejar que la mano muerta del pasado rija el derecho vivo del presente. Como se sabe, los precedentes sirven para ayudar en el desarrollo ordenado del derecho pero no deben ni pueden detener dicho desarrollo. El derecho ha evolucionado mucho desde que se escribió dicho caso de *Terceiro* hace ya poco más de una generación. La literatura

reciente sobre el particular es muy rica y bien conocida. Se han ocupado del tema prácticamente todos los juristas contemporáneos de Europa y América. Ejerció sobre esa literatura, como era de esperarse, apreciable influjo la vigorosa producción anterior europea de fines del siglo 19 y de principios del 20 de los juristas que reaccionaron contra el fetichismo legalista y el conceptualismo riguroso, dando entrada en la elaboración científica del derecho a factores sociológicos y teleológicos. Entre otros, pueden recordarse los nombres de Geny, Hauriou, Stammler, Saleilles, Ehrlich, Ihering y Heck. Entre la literatura reciente a la cual aludimos pueden mencionarse, entre otras, las siguientes obras: Allen, *Law in the Making*, 7ma. ed. (1964); Bodenheimer, *Jurisprudence* (1962); Castán, *La Formulación Judicial del Derecho*, 2da. ed. (1954); Friedmann, *Legal Theory*, 5ta. ed. (1967); Friedmann, *Law in a Changing Society*, (1959); Hernández Gil, Antonio, *Metodología del Derecho*, Madrid (1945); Lloyd, *Introduction to Jurisprudence*, ed. rev. (1965); Paton, *A Text-Book of Jurisprudence*, 2da. ed. (1951); Pound, *Law Finding Through Experience and Reason* (1960); Pound, *The Spirit of the Common Law*, Beacon Press (ed. 1966); Stone, Julius, *The Province and Function of Law* (1946).

De nuestra jurisdicción véanse los casos de *Piovanetti Doumont v. Martínez*, 99 D.P.R. 663 (1971); *Silva v. Comisión Industrial*, 91 D.P.R. 891 (1965); *Pérez v. Bauzá*, 83 D.P.R. 222, 226 (1961); *Millán v. Caribe Motors*, 83 D.P.R. 494, 508–509 (1961).

■ Además de lo anterior, fue el propio Estado, a través del Director del Negociado de la Lotería, el que le indicó a la demandante que "El procedimiento corriente es llevar una acción civil ordinaria en que el que pierde la fracción aparece como demandante y el Negociado de la Lotería y el Departamento de Hacienda como demandados." El demandado está impedido de ir contra sus propios actos. Este principio, tam-

bién basado en fundamentos éticos y equitativos, permea todo el derecho. *Silva* v. *Comisión Industrial*, 91 D.P.R. 891, 904 (1965). Como señala Puig Brutau, "quién ha dado lugar a la situación engañosa . . . no puede hacer que su derecho prevalezca por encima del derecho de quién ha depositado su confianza en aquella apariencia." [1]

Como hemos tenido ocasión de señalar antes—*Silva* v. *Comisión Industrial*, supra, pág. 899—en nuestro derecho, de raigambre europea continental, el derecho civil y la equidad no se bifurcaron por dos caminos distintos como ocurrió por razones históricas en el *common law* inglés, sino que ambos ingredientes se han mantenido, como lo eran desde su origen, unidos y en el mismo cauce de desarrollo. Como allí señalamos, "la equidad es levadura que propicia el desarrollo del derecho civil centro de sí mismo, sin ser una rama o jurisdicción separada." [2]

Además, la propia ley que autoriza los pleitos contra el Estado dispone que la misma no afectará las acciones "para las que existe legislación específica" las que seguirán rigiéndose por las leyes aplicables. Ley Núm. 104 de 29 de junio de 1955, Art. 4; 32 L.P.R.A. sec. 3079. La Ley de la Lotería dispone para los casos sobre billetes extraviados y al efecto provee que:

"Si transcurrido el término de seis (6) meses que concede la sec. 122 de este título para el cobro de billetes premiados aparecieren pendientes de pago el billete o las fracciones de billete a que se refiere la declaración jurada antes mencionada, el Director del Negociado de la Lotería deberá proceder a hacer el pago del premio que corresponda a la persona que suscribe la declaración jurada."—15 L.P.R.A. sec. 120, último párrafo.

---

[1] *Estudios de Derecho Comparado* (1951), pág. 103.

[2] Para una discusión resumida de esa proposición véase *Silva* v. *Comisión Industrial*, supra, a las págs. 898–905. Para una discusión más amplia y excelente véase, Castán, *La Formulación Judicial del Derecho*, 2da. ed. (1954), págs. 26 y ss. También Allen, *Law in the Making*, 6ta. ed. (1958), Cap. V y Friedmann, *Legal Theory*, 5ta. ed. (1967), pág. 543; 4ta. ed., pág. 493.

■ Este caso de $960.00 no debió haber llegado nunca a este Tribunal ni debió haberle tomado el valioso tiempo a las partes y al Tribunal que les ha tomado con motivo de este recurso de revisión. El asesoramiento legal siempre, y especialmente en las oficinas públicas, debe dirigirse vigorosamente a que se haga justicia y no deben utilizarse recursos meramente legalistas para frustrarla. Como señala Castán, "si no hemos de movernos dentro de una concepción estéril de puro normativismo, las ideas de justicia y equidad son esenciales y consustanciales a la noción del Derecho, el cual dejaría de cumplir sus finalidades morales y sociales si no aspirase a realizar la justicia, y no una justicia abstracta y teórica, sino una justicia realista y humana acorde a las circunstancias de cada caso." [3]

Y del mismo autor copiamos lo siguiente:

"[E]l uso de la equidad es una exigencia insustituíble de la administración de justicia. No en vano la equidad es el propio criterio de justicia realizado en su mayor perfección, teniendo en cuenta el sentido moral y humano que ha de tener el Derecho positivo y la necesidad de adaptar sus normas a las circunstancias de los casos concretos." [4]

Tampoco se cometió el segundo error señalado.

*Se confirmará la sentencia enmendada dictada en este caso por el Tribunal Superior, Sala de Caguas, en 5 de junio de 1970.*

El Juez Presidente Interino, Señor Pérez Pimentel, y el Juez Asociado Señor Dávila concurren en el resultado sin opinión.

---

[3] *La Formulación Judicial del Derecho*, 2da. ed. (1954), pág. 87.
[4] Obra citada, pág. 102.