ALEJANDRO M. GONZÁLEZ, demandante y recurrido, *v.* CO-OPERATIVA DE AHORRO Y CRÉDITO DE LOS AGENTES DE LA LOTERÍA, codemandada y recurrente, DEPARTAMENTO DE HACIENDA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, codemandado; SECRETARIO DE HACIENDA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrido, *v.* MATEO PEÑA HERNÁNDEZ, demandado y peticionario, ÁNGEL D. DÁVILA, ÁNGEL LUIS FÉLIX y MARINA LÓPEZ MERCADO, demandados y recurridos; ESTADO LIBRE ASOCIADO DE PUERTO RICO y SECRETARIO DE HACIENDA, demandantes y recurridos, *v.* GABRIEL MERCADO TORRES y ADALINA DE JESÚS, demandados y peticionario el primero; ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrido, *v.* JUSTO MÉNDEZ PÉREZ y OTROS, demandados y peticionario el primero; ESTADO LIBRE ASOCIADO DE PUERTO RICO y SECRETARIO DE HACIENDA, demandantes y recurridos, *v.* FERNANDO SALOMÓN, ROSARIO ROSARIO MARTÍNEZ y JOSÉ J. VÉLEZ, demandados y recurrente el primero.

*Números:* R-84-439    *Resueltos:* 30 de junio de 1988
CE-85-532
CE-85-469
CE-85-845
CE-86-92

2

*Gonzalo Diago Betancourt,* abogado de la Cooperativa de Ahorro y Crédito de Puerto Rico, recurrente; *Francisco Radinson Pérez,* abogado de Alejandro M. González, recurrido.

· EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Nos toca determinar si, a la luz de nuestro ordenamiento civil y mercantil, un ciudadano que compra billetes de la Lotería de Puerto Rico a una persona que reviste la apariencia externa de un vendedor habitual, en un lugar donde se acostumbra celebrar ese tipo de venta, debe confiar que está adquiriendo legalmente dicho bien mueble aun cuando el vendedor no tenga a la vista la identificación oficial expedida por el Negociado de la Lotería de Puerto Rico.

Como corolario lógico de esta controversia, procedemos a resolver lo relativo a si un vendedor de billetes, a quien se le extravían o se le hurtan unos billetes, puede o no reivindicarlos de unos jugadores quienes los adquirieron posteriormente de otros billeteros que lucían como tales y sin conocer que los billetes habían sido hurtados o se habían extraviado.

I

*HECHOS:*

1. *González, etc. v. Coop. Ahorro y Créd., etc.; Secretario de Hacienda v. Fernández Pagán*, R-84-439(1)

A. *González v. Cooperativa de Ahorro y Departamento de Hacienda.*

El 14 de enero de 1981 el aquí recurrido Alejandro M. González presentó acción civil contra la compareciente Cooperativa de Ahorro y Crédito de los Agentes de la Lotería de Puerto Rico, Inc. (Cooperativa) y el Departamento de Hacienda, en la que reclama la entrega de $45,000, cantidad con que resultó premiado el billete Núm. 10983, serie D, en el sorteo ordinario de 20 de noviembre de 1980. Solicitó, a su vez, la suma de $100,000 por concepto de daños como conse-

_____

(1) Estas dos causas fueron consolidadas por la Sala de San Juan del Tribunal Superior de Puerto Rico debido a que versaban sobre una misma cuestión de derecho.

cuencia de los sufrimientos generados por la negativa de la Lotería de Puerto Rico a pagarle por el billete que poseía y que presentó para cobro.

La demandada recurrente Cooperativa es una entidad dedicada al servicio de entrega a domicilio de la cuota de billetes asignados a las distintas agencias asociadas en el país a cambio de un pago mínimo por el servicio de distribución.(2)

El 13 de noviembre de 1980, a las 10:00 A.M., el distribuidor de billetes para la Cooperativa en el pueblo de Corozal, Rafael Córdova Ledesma, se personó al Cuartel de la Policía de esa localidad y suscribió querella en la que alega la pérdida de ciento ocho (108) billetes de siete (7) agencias y otra de veinticuatro (24) billetes, para un total de ciento treinta y dos (132) billetes de lotería. Art. 10 de la Ley de la Lotería de Puerto Rico, 15 L.P.R.A. sec. 120(a).(3)

---

(2) Tal servicio consiste en que la Cooperativa de Ahorro y Crédito de los Agentes de la Lotería de Puerto Rico, Inc. (Cooperativa) adquiere del Negociado de la Lotería de Puerto Rico, mediante paga, las cuotas de billetes de las agencias de los socios que se acogen al servicio y luego las entrega en cada pueblo de la isla donde residiese el agente, previo el pago de los billetes por el agente. De no verificarse el pago de los billetes por el agente a que van consignados (de ordinario ello se efectúa por el agente al dejar un giro bancario por la suma correcta en el lugar indicado, en este caso con el señor Córdova Ledesma), el mensajero de la Cooperativa se regresa a ésta con los billetes correspondientes que pasan nuevamente a la Lotería de Puerto Rico, como sobrantes, para su venta.

(3) Que dispone, en lo pertinente, lo siguiente:

"Cualquier persona a quien se le extravíen, destruyan en cualquier forma o le sean apropiados ilegalmente o robados billetes o fracciones de billetes de la lotería, que desee establecer en su día una reclamación para en caso de que dichos billetes resulten premiados, deberán radicar ante el Director del Negociado de la Lotería o enviar por correo certificado una declaración jurada no menos de veinticuatro (24) horas antes de la fecha en que había de celebrarse el sorteo a que correspondan los billetes o fracciones. En caso de apropiación ilegal o robo de billetes o fracciones, la persona a quien le fueren apropiados ilegalmente o robados deberá notificarlo además, al Cuartel de la Policía más cercano. Se hará constar en dicha declaración jurada el hecho de la pérdida, destrucción o apropiación ilegal o robo de los billetes o fracciones y las circunstancias envueltas en la misma. En caso de que se alegue apropiación ilegal o robo de los billetes o fracciones se hará constar en la declaración jurada el número de la querella asignado por la Policía." 15 L.P.R.A. sec. 120(a).

Al día siguiente, un oficial de la Cooperativa prestó declaración jurada ante un notario público donde exponía el extravío de los ciento treinta y dos (132) billetes ya aludidos. El documento público fue jurado por el Sr. José Luis Janer Frías, Administrador–Tesorero de la Cooperativa.

En el sorteo ordinario Núm. 470 de 20 de noviembre de 1980, salió agraciado con el segundo premio ($45,000) el billete Núm. 10983, serie D. El tenedor de ese billete resultó ser el demandante recurrido Alejandro M. González, quien lo había adquirido mediante compra en el pueblo de Juncos al Sr. Jorge Zayas Jiménez, vendedor de billetes legalmente autorizado por el Negociado de la Lotería de Puerto Rico.

La sala de instancia determinó que el Señor Zayas Jiménez había recibido el billete premiado para vender al detal de manos de un conocido acaparador de billetes conocido como "Juan Elías". El magistrado que presidió la causa señaló que no tenía duda que el señor Zayas Jiménez recibió el billete en el libre curso ordinario de venta de billetes. Concluyó que el Negociado de la Lotería de Puerto Rico "está consciente[,] tolera y permite la existencia y operación de acaparadores de billetes como medio alterno para mover y vender las distintas series de sorteos ordinarios y extraordinarios". Sentencia, pág. 6.

Por haber el recurrido señor González adquirido el billete de buena fe, mediante compra y justo valor en una feria, bolsa o mercado de un comerciante legalmente establecido, Art. 393 del Código Civil, 31 L.P.R.A. sec. 1479,(4) la sala de

---

(4) Establece que:

"La posesión de los bienes muebles adquiridos de buena fe equivale al título. Sin embargo, el que hubiese perdido una cosa mueble o hubiese sido privado de ella ilegalmente, podrá reivindicarla de quien la posea.

"Si el poseedor de la cosa mueble perdida o sustraída la hubiese adquirido de buena fe en venta pública, no podrá el propietario obtener la restitución sin reembolsar el precio dado por ella.

"En cuanto a las cosas adquiridas en la bolsa, feria o mercado, o de un comerciante legalmente establecido y dedicado habitualmente al tráfico de objetos

instancia lo reconoció legítimo dueño y tenedor del referido bien mueble.

La Cooperativa presentó el correspondiente recurso de revisión ante nos al alegar que incidió el tribunal de instancia al apreciar los hechos en esta causa. Razona que la sala de instancia le dio validez y reconoció la existencia de la actividad ilegal de acaparar billetes de lotería. Finalmente, entiende que los billetes premiados no salieron al mercado por los medios de costumbre, por lo que es de aplicación la norma expuesta en el primer párrafo del Art. 393 del Código Civil, *supra*, a los efectos de que el que pierde o se le priva de un bien mueble de forma ilegal podrá reivindicarlo de quien lo posea.(5)

## 2. *E.L.A. v. Mercado Torres, Adalina De Jesús*, CE-85-469

El peticionario Gabriel Mercado Torres, agente de la Lotería de Puerto Rico, presentó declaración jurada el 5 de diciembre de 1983 a los efectos de informar que el billete Núm. 49047, serie F, del sorteo correspondiente al 18 de diciembre de 1983, le había sido robado. El delito ocurrió cuando dos (2) sujetos armados despojaron de su maletín al señor Mercado Torres estando éste frente al Condominio Las Américas de Río Piedras.

El billete hurtado resultó premiado en el sorteo de la Lotería 513X y le correspondió la suma de $400. Con posterioridad a la celebración del mencionado sorteo, la poseedora demandada Adalina de Jesús presentó al cobro las cien (100) fracciones del referido billete. No le fue pagado debido a que aparecía como billete robado.

---

análogos, se estará a lo que dispone el Código de Comercio, Título 10." 31 L.P.R.A. sec. 1479.

(5) El tribunal (Arbona Lago, Juez) dictó sentencia a favor de los compradores en los casos consolidados, Casos Civiles Núms. 82-3291, 82-7198 y 83-796. El otro afectado, señor Fernández Pagán, no recurrió a este Tribunal.

El Secretario de Hacienda instó pleito para obligar a las partes a litigar entre sí (*inter-pleader*) ante la Sala de San Juan del Tribunal de Distrito de Puerto Rico.

El tribunal determinó que la señora De Jesús acostumbraba comprarle billetes de lotería en Río Piedras al esposo de su suegra, quien reside en los EE.UU. Le entregó el dinero para la compra del billete objeto de controversia a un compañero de estudios que se hospedaba en la Calle Arzuaga de Río Piedras, a saber, Sr. Eliseo Ortiz Rivera. El señor Ortiz Rivera compró dicho billete el 8 de diciembre de 1984 a un señor en la Calle De Diego, frente a una iglesia, quien tenía otros billetes y lucía como billetero autorizado por ley.

El juzgador de la causa (López Rodríguez, Juez) concluyó que se encontraba ante una controversia novel en esta jurisdicción. Razonó que a la señora De Jesús le amparaba la prescripción instantánea que aparece en el último párrafo del Art. 393 del Código Civil, *supra*. Finalizó la sentencia expresando textualmente lo siguiente:

> Respecto a la venta de billetes de la lotería, sabemos que la forma habitual y casi universal de la venta de los mismos en nuestro país es mediante billeteros que habitualmente se detienen en lugares públicos a vender su mercancía. Ilógico sería pensar que un comprador de billetes que los compra en una tienda, tenga protección de la prescripción instantánea y otro que lo compre a un billetero con apariencia de tal en un lugar público no tenga tal protección. Da mayor confianza un billetero con apariencia de tal que vende sus billetes en un lugar público que una tienda que vende billetes. Es de conocimiento general que en las tiendas normalmente no se venden billetes y que en el uso común y ordinario representa la mayor apariencia de licitud el tráfico de billetes a través de billeteros que abundan en nuestro país. Sabida es la importancia del uso y costumbre en el derecho mercantil. . . .
>
> El hecho de que los billeteros no exhibieran identificación según requiere el Reglamento de la Lotería no altera nuestra conclusión. La Ley y el Reglamento de la Lotería, en ese aspecto, reglamentan las relaciones entre los agentes y la Lote-

ría de Puerto Rico y no afecta los derechos entre partes privadas. Adicionalmente, consideramos que la falta de tal identificación no tiene efectos sustanciales en la apariencia de licitud de los billeteros, ya que es el uso y costumbre que los billeteros no luzcan la referida identificación. Independientemente de ello, consideramos que tal omisión tendría el efecto que podía tener en una tienda que no se exhibieran las licencias requeridas por ley.

Siendo el fundamento de la prescripción instantánea asegurar la vida del comercio no debemos dejar huérfano de dicha protección al comercio de billetes de la lotería ni a los compradores de los mismos quienes deben tener la confianza de poderlos comprar sin temor a obtener por premio un litigio. Dicha conclusión, además, es la única que asegura la vida misma de la Lotería de Puerto Rico la cual, nos consta, por la infinidad de casos que se radican, se está afectando seriamente por los litigios frecuentes entre billeteros que alegan haber extraviado sus billetes y jugadores que adquieren los mismos posteriormente de buena fe.

La conclusión a que llegamos no s[ó]lo es la ajustada a derecho sino además la más consonante con la justicia sustancial. Nos parece que la justicia requiere que el jugador que invierte su dinero con la expectativa de un premio sea quien obtenga el beneficio de dicho premio por dichos billetes. Lo justo es, además, que cada cual sufra por las consecuencias de lo que le acontece y no que los compradores de billetes de buena fe sufran el resultado de una pérdida de unos billetes en la cual no tuvieron intervención. (Cita omitida.) Apéndice 5, págs. 16–17.

Inconforme, el señor Mercado Torres pidió revisión a la Sala de San Juan del Tribunal Superior de Puerto Rico (Hermida, Juez). Éste procedió a confirmar la sentencia del Tribunal de Distrito al entender que lo medular de la controversia no era determinar si los billetes robados habían sido adquiridos en un almacén o tienda. Art. 59 del Código de Comercio, 10 L.P.R.A. sec. 1154. Lo importante era establecer que habían sido comprados a una persona que *revestía la apariencia externa de un vendedor habitual de billetes para poder confiar que se adquiría legalmente dicho billete.*

Ante nos comparece el señor Mercado Torres y argumenta que incidieron los juzgadores de instancia al no aplicar al caso el primer párrafo del precitado Art. 393 del Código Civil. Sostiene que el señor que vendió el billete no estaba debidamente identificado, según exige el Art. 5 de la Ley de la Lotería de Puerto Rico, 15 L.P.R.A. sec. 115,(6) y que no vendió el billete en un establecimiento comercial, por lo que no le debe amparar la prescripción instantánea del ordenamiento mercantil.

### 3. *E.L.A. v. Peña Hernández*, CE-85-532

El demandado y peticionario Mateo Peña Hernández ha sido vendedor de billetes autorizado por el Negociado de la Lotería de Puerto Rico por cerca de veintiocho (28) años. Conforme a la Ley de la Lotería de Puerto Rico, 15 L.P.R.A. sec. 111 *et seq.*, presentó declaración jurada el 18 de noviembre de 1983, en la que afirma que el billete Núm. 45255, series D, E y F del sorteo 513X, le había sido hurtado.

El 18 de diciembre de 1983 el billete aludido salió premiado. Los recurridos Ángel Dávila, Ángel Luis Félix y Marina López Mercado presentaron sus respectivas fracciones de billete para el cobro, pero fueron informados que existía una declaración jurada suscrita por el peticionario que les impedía hacerlo. El Secretario de Hacienda presentó la co-

(6) El cual dispone:

"Ninguna persona podrá dedicarse a la venta de billetes de la lotería sin tener una licencia debidamente expedida como agente o como vendedor ambulante. Los agentes para la venta de billetes serán nombrados por el Director del Negociado de la Lotería con la aprobación del Secretario de Hacienda. Los vendedores ambulantes serán nombrados por los agentes con la aprobación del Director del Negociado de la Lotería, con sujeción a las condiciones que se fijen por reglamento. Para acreditar su cargo de expendedores de billetes, los agentes y vendedores ambulantes deberán llevar consigo su licencia, la que habrán de mostrar según se disponga por reglamento. Dicho reglamento deberá estar orientado a facilitar la labor de los agentes del orden público para evitar que billetes de la lotería sean vendidos por personas no autorizadas." 15 L.P.R.A. sec. 115.

rrespondiente acción civil para obligar a los reclamantes a litigar entre sí.

La Sala de Río Piedras del Tribunal de Distrito de Puerto Rico (Bauzá, Juez) celebró una vista en su fondo y adjudicó la controversia a favor de los tenedores del billete. Concluyó que éstos quedaban protegidos por la prescripción mercantil instantánea debido a que compraron de buena fe a quien aparentaba ser billetero en un mercado público.

Tras la confirmación de la sentencia[7] por parte del Tribunal Superior (Hermida, Juez), el señor Peña Hernández presentó este recurso. Por tratarse de una controversia de

---

[7] En lo que nos atañe, resolvió el juez señor Hermida que:

"En su segundo señalamiento de error el apelante argumenta que a la luz de los hechos estipulados (que el apelante era un billetero al cual le hurtaron unos billetes que luego resultaron premiados, que él presentó a tiempo ante el Negociado de Lotería la declaración jurada que exige la ley con relación a dicho hurto, y que los demás codemandados compraron los billetes hurtados y luego reclamaron el premio correspondiente) le corresponde el premio en cuestión al billetero y no a los compradores. Consideramos que no tiene razón el apelante. Dispone el primer párrafo del Art. 393 del Código Civil, 31 LPRA 1479, que '[l]a posesión de los bienes muebles adquiridos de buena fe equivale al título. Sin embargo, el que hubiese perdido una cosa mueble o hubiese sido privado de ella ilegalmente, podrá re[ivin]dicarla de quien la posea'. Los comentaristas han establecido que el 'título' al que se refiere este párrafo no es el título definitivo de propiedad sino únicamente aquel título de posesión que es suficiente para usucapir, luego de haber transcurrido los plazos correspondientes. De ser dicho párrafo el único aplicable no hay duda de que el apelante tendría razón, pues fue estipulado que él era el dueño original del billete y que fue privado de él ilegalmente, por lo que tendría derecho a re[iv]indicarlo de los demás codemandados, ya que no había pasado todavía a la fecha de la presentación de la demanda el plazo ordinario de usucapión de bienes muebles, que es el de tres años. Sin embargo, dispone el último párrafo del mismo [Art.] 393 que '[e]n cuanto a las cosas adquiridas en la bolsa, feria o mercado, o de un comerciante legalmente establecido y dedicado habitualmente al tráfico de objetos análogos, se estará a lo que dispone el Código de Comercio'. Es asunto trillado que en la situación aplicable el Código de Comercio dispone l[a p]rescripción instantánea a favor del comprador. Entendemos que ese último párrafo es el controlante en este caso. Está estipulado que todos los codemandados apelados compraron los respectivos pedazos de billete de personas que tenían la apariencia externa de ser vendedores de billetes de la lotería. Bajo tales circunstancias es claramente distinguible el caso de *Fuentes* v. *Fulano de Tal*, 84 DPR 506, 512 (1962) en que descansa el apelante, pues los billetes allí no fueron comprados a un billetero sino a una persona que se dedicaba a otros menesteres." Caso Núm. CE-85-532, Sentencia, págs. 2–3.

derecho similar a la planteada en los casos ya narrados expedimos el auto y consolidamos.

4. *E.L.A. v. Méndez Pérez*, CE-85-845

El peticionario Justo Méndez Pérez, agente de la Lotería de Puerto Rico, presentó declaración jurada el 3 de agosto de 1984 en la que informa que le habían hurtado varios billetes, entre los que se encontraba el Núm. 05099, serie D, correspondiente al sorteo extraordinario Núm. 364X. Dicho billete salió premiado en el sorteo celebrado el 3 de septiembre de 1984 a razón de $80 por fracción.

El Secretario de Hacienda instó el correspondiente recurso de *inter-pleader* cuando doce (12) poseedores se presentaron a cobrar sus fracciones. La Sala de Río Piedras del Tribunal de Distrito de Puerto Rico (López Rodríguez, Juez) determinó que el compareciente Justo Méndez Pérez cumplió con todos los trámites de ley con relación a la pérdida por hurto de éste y otros billetes de la Lotería de Puerto Rico. Resolvió que el peticionario se dedica a comprar billetes a otras agencias para venderlos en el pueblo de San Lorenzo. Para el sorteo extraordinario que provoca este pleito, había invertido unos $9,300 en billetes. El 2 de agosto de 1984 un grupo de seis (6) personas le compraron billetes de forma simultánea. Luego de marcharse estos clientes notó que se había desaparecido un bulto de billetes. El magistrado concluyó que el billete agraciado había sido hurtado al peticionario.

Los poseedores de las fracciones que comparecieron a juicio provenían de distintos puntos de la isla. Todos habían adquirido sus fracciones en lugares públicos de quien aparentaba ser billetero:

"[1.] El codemandado, Juan Borges Muñoz, reside en San Lorenzo, Puerto Rico[,] y es un comerciante retirado. Este pudo haber comprado sus veinte fracciones del referido número en el Barrio Cueva Pajita, sito entre Lares y San Sebas-

tián[,] el día 15 de julio de 1984, mientras se encontraba en una jira en dicho lugar con su familia, o bien en el Hospital Ryder Memorial de Humacao, o bien en el pueblo de Juncos o Río Piedras, Puerto Rico, por cuanto compró billetes de la lotería en todos esos lugares para este sorteo. A todas las personas a quien[es] él le[s] compró billetes tenían apariencia de billetero.

[2.] El codemandado, Manuel San Pedro, mayor de edad, casado, propietario y vecino de Bayamón, Puerto Rico, compró sus cinco fracciones de este billete frente a la Plaza del Mercado de Río Piedras, Puerto Rico. Adquirió las mismas de un billetero que tenía otros billetes y que tenía una edad de 45 a 50 años.

[3.] El codemandado, José A. Acosta, residente en Puerto Nuevo, Río Piedras, Puerto Rico[,] y retirado de las fuerzas armadas, luego de 29 años de servicio, adquirió sus dos fracciones del billete, aproximadamente dos semanas antes del sorteo. Compró dichas fracciones a un billetero en la Plaza de[l] Mercado de Río Piedras, Puerto Rico. El referido billetero no tenía identificación. El Sr. Acosta considera a todas aquellas personas que venden billetes en la calle como un billetero. . . .

[4.] La codemandada, Elizabeth Guzmán, residente de la Urbanización Villa Carolina, Carolina, Puerto Rico, trabaja como oficinista Dactilógrafa en el Registro Central de Cáncer, del Departamento de Salud del Estado Libre Asociado de Puerto Rico. Ella acostumbra a jugar de $2.00 a $3.00 en billetes de la lotería casi todas las semanas. Para este sorteo ella compró cincuenta fracciones en compañía de otros familiares.

Esas fracciones las adquirió una semana antes del sorteo en la Avenida De Diego, cerca de la Plaza del Mercado en Río Piedras, Puerto Rico. El billetero a quien ella le compró esas cincuenta fracciones, tenía más billetes, pero del único número que tenía cincuenta fracciones era del que resultó premiado. Ella interesaba comprar un billete entero y solamente pudo adquirir esas cincuenta fracciones.

[5.] El codemandado, Antonio Hidalgo, reside en Puerto Nuevo, Río Piedras, Puerto Rico[,] y es retirado de la[s] fuerzas armadas. [É]l acostumbra jugar un máximo de diez

fracciones de número de billetes de la lotería semanalmente[.] Esta fracción del billete que resultó premiado la pudo haber comprado bien en el pueblo de Moca, de donde es natural[,] o en Aguadilla en el Centro Gubernamental o en la Plaza del Mercado de Río Piedras. Todos los billetes que él adquirió para este sorteo se los compró a billeteros de la lotería.

[6.] La codemandada, Aurea Tejada, reside en la Calle Coll y Toste, Urb. Baldrich, Hato Rey, Puerto Rico[;] es ama de casa. Compró las dos fracciones de este billete una semana antes del sorteo cerca de la Tienda Pitusa en la Avenida De Diego, Río Piedras, Puerto Rico[,] y adquirió las mismas de un billetero que tenía también otros billetes para ofrecer para la venta." (Énfasis suprimido.) Recurso de *certiorari*, págs. 5–6.

El Tribunal de Distrito adjudicó la controversia a favor de los tenedores de fracción. Concluyó que "[c]ontrario a lo que sucede cuando se encuentra un bien mueble[,] como en el caso *Mieres*[, *Fiscal v. Pagán*, 76 D.P.R. 699 (1954),] o cuando se compra a una persona no dedicada habitualmente al tráfico de objetos análogos, como sucedió en el caso de *Fuentes* [*v. Fulano de Tal*, 84 D.P.R. 506 (1962)], cuando se compra el bien mueble en bolsa, feria o mercado o de un comerciante legalmente establecido o dedicado habitualmente al tráfico de objetos análogos se produce a favor del comprador una prescripción instantánea adquiriendo el comprador de buena fe inmediatamente un título de propiedad válido". Apéndice C, pág. 17.

El señor Méndez Pérez presentó escrito de apelación ante el Tribunal Superior en el que alega que erró el Tribunal de Distrito, toda vez que los poseedores no habían adquirido sus fracciones en un almacén o tienda abierta al público, elemento alegadamente indispensable en la aplicabilidad del Art. 59 del Código de Comercio, *supra*.

El Tribunal Superior (Hermida, Juez) confirmó la sentencia emitida en todos sus aspectos. Expedimos el auto solicitado por el agente Méndez Pérez y consolidamos los recursos.

### 5. *E.L.A. v. Salomón y Otros*, CE-86-92

El recurrente Fernando Salomón se desempeña como vendedor de billetes para el Negociado de la Lotería de Puerto Rico. El 21 de diciembre de 1984 presentó declaración jurada en la que expresó que el día antes alguien le forzó la cerradura del baúl de su automóvil y sustrajo varios billetes que se proponía vender.

Uno de los billetes hurtados, el Núm. 06334, serie A, resultó premiado en el sorteo 52X celebrado el 26 de diciembre de 1984. El recurrente y los tenedores de fracción del billete se disputaron el premio. El Secretario de Hacienda procedió a incoar acción civil para obligar a las partes a litigar sus reclamos.

El Tribunal de Distrito de Puerto Rico (Mendoza Vidal, Juez) determinó que el Negociado de la Lotería de Puerto Rico no incluyó en su lista de billetes informados como hurtados el billete aludido, no empece el que sí publicó uno de los números reseñados en la declaración jurada.

Comparecieron al pleito en calidad de codemandados el Sr. José J. Vélez, quien reclamó $500 por las fracciones que poseía, y el señor Rosario Martínez, quien exigió la entrega de $1,600.

El señor Vélez informó que es agente de la Lotería de Puerto Rico y que aceptó las fracciones premiadas como pago de varios billetes que le vendió a otro ciudadano. Señaló que constató con la lista oficial de premios que las fracciones resultaron agraciadas y no aparecían hurtadas, por lo que accedió a aceptarlo como pago a su acreencia.

El Tribunal de Distrito dictaminó que el Negociado de la Lotería de Puerto Rico había incurrido en negligencia al tan sólo publicar como hurtado uno sólo de los billetes informados por el señor Salomón en su declaración jurada. Ordenó el pago de $500 a favor del señor Vélez al expresar que "[o]tra decisión de nuestra parte destruiría la confianza que

debe tener el público en la lista oficial de premios publicada por el Negociado de la Lotería de Puerto Rico". Sentencia, pág. 3. En cuanto al otro tenedor de fracciones, expresó que el señor Rosario Martínez había adquirido la misma mediante compra llevada a cabo en la Calle Loíza de Santurce a una persona que aparentaba ser vendedor de billetes.

El tribunal concluyó que estaba ante un típico caso del comprador de billetes que adquiere fracciones del mismo a una persona con la apariencia de billetero, "como los tantos que caminan por las calles o se apostan en los sitios donde de ordinario se venden billetes de la Lotería". Sentencia, pág. 3. Adjudicó la controversia a favor del poseedor, y el Tribunal Superior de Puerto Rico, Sala de San Juan (Hermida, Juez), confirmó la sentencia de instancia "por los fundamentos expresados en la propia sentencia" de éste. Sentencia, pág. 22.

Ante nos, el señor Salomón argumenta que el vendedor de billetes que se aposta en una esquina de una calle no debe ser considerado un "comerciante establecido" al amparo de la legislación mercantil sobre prescripción inmediata. Acordamos expedir el auto de *certiorari* y consolidar el recurso con los ya narrados anteriormente.

## II

■ Las sentencias recurridas deben confirmarse. Además de interpretar correctamente el derecho aplicable, los jueces de instancia hicieron justicia. Los adquirentes de los billetes nada tenían que ver con las circunstancias previas a su compra. Ellos los adquirieron de buena fe con la misma expectativa de lucro que anima a la inmensa mayoría de nuestros conciudadanos a probar suerte en el juego legal de la lotería.

■ Al igual que resolvimos en *Morales Peterson v. Tribunal Superior*, 104 D.P.R. 78 (1975), aquel que adquiere en mercaderías o tiendas abiertas al público tiene el beneficio

de la doctrina sobre prescripción instantánea. Por analogía, la "mercadería o tienda abierta" del vendedor de billetes de lotería en Puerto Rico son todos los sitios públicos, incluso plazas de mercado, plazas de recreo, centros comerciales, calles, carreteras públicas, restaurantes, oficinas públicas y privadas; en fin, toda la gama de posibilidades de sitios en que pueda haber una persona interesada en comprar billetes de lotería.

Por otro lado, el Art. 393 del Código Civil, *supra*, nos refiere al Código de Comercio cuando la cosa se adquiere de un comerciante legalmente establecido y *dedicado habitualmente al tráfico de objetos análogos.*

En *Morales Peterson v. Tribunal Superior*, supra, págs. 80–81, resolvimos que:

El Art. 59 del Código de Comercio, 10 L.P.R.A. sec. 1154, dispone:

"La compra de mercaderías en almacenes o tiendas abiertos al público, causará prescripción de derecho a favor del comprador respecto de las mercaderías adquiridas, quedando a salvo en su caso, los derechos del propietario de los objetos vendidos para ejercitar las acciones civiles o criminales que puedan corresponderle contra el que los vendiere indebidamente."

La venta de cosa ajena es perfectamente válida en el Derecho Mercantil Español, como lo era en tiempos romanos. 3 Langle y Rubio, *Manual de Derecho Mercantil Español*, Barcelona, 1959, pág. 189; Garrigues, *Tratado de Derecho Mercantil*, t. III, vol. 1°, Madrid, 1963, pág. 251. La prescripción de derecho que provoca es instantánea, adquiriendo el comprador de buena fe inmediatamente un título válido. "El fundamento de esta prescripción", señala Gay de Montellá, "es la necesidad de asegurar la vida del comercio mediante el amparo de la posesión de las cosas compradas de buena fe en los almacenes o tiendas abiertas al público ..." 1 Gay de Montellá, *Código de Comercio Español* 353. "Las exigencias de la seguridad del tráfico [comercial] justifican", afirma Uría, "esta desviación de la regla civil, que permite al propietario reivindicar la cosa

de quien la posea." Uría, R., *Derecho Mercantil*, Madrid, 4a ed., 1964, pág. 460.

En Derecho Mercantil, el verdadero dueño de un bien hurtado no tiene derecho a su reivindicación en casos como el presente, ni siquiera a importunar al comprador de buena fe o a inquietarlo con la pretensión de impugnar la eficacia del contrato. Langle y Rubio, *El Contrato de Compraventa Mercantil*, Barcelona, 1958, págs. 147-8. Sus remedios son los que decreta el Código, ejercitar las acciones civiles o criminales que puedan corresponderle contra quien vendió la mercancía indebidamente. Uría, *loc. cit.* Para la situación bajo el Derecho Civil, cuando el vendedor no tiene tienda o almacén abierto al público, véase a *Fuentes* v. *Fulano de Tal*, 84 D.P.R. 506 (1962) y para el caso contrario consúltense los Arts. 393 y 1855 del Código Civil, 31 L.P.R.A. secs. 1479 y 5276.

▪ Estas normas son claras. Los hechos particulares de estos casos y las realidades del tráfico de billetes despejan cualquier duda sobre su vigencia en estos casos. Los que venden billetes, tengan o no el requisito teórico-legal de tener una licencia expedida por el Negociado de la Lotería de Puerto Rico, actúan en calidad de comerciantes. Para el que les compra, tienen todos los atributos de un comerciante legítimo. El cumplimiento o no del requisito de licencia es, para los efectos del adquirente, totalmente irrelevante.[8]

Ante la realidad del tráfico comercial, no podemos asumir una posición técnica legalista que despoje a terceros inocentes de sus derechos.

---

[8] El requisito de licencia tiene el propósito primordial, según surge del Art. 5 de la Ley de la Lotería de Puerto Rico, 15 L.P.R.A. sec. 115, de "evitar que billetes de la lotería sean vendidos por personas no autorizadas". Los Arts. 5–A y 5–B de la Ley de la Lotería de Puerto Rico, 15 L.P.R.A. sec. 115a y 115b, establecen las penalidades administrativas y criminales y el procedimiento a seguir cuando se sorprenda a una persona vendiendo billetes de lotería sin la correspondiente licencia. Estas disposiciones rigen la relación entre los vendedores, con o sin licencia, y la Lotería de Puerto Rico. Nada tienen que ver con los derechos de los poseedores y adquirentes de los billetes. Lo contrario sería penalizar a personas, como los recurridos, que han actuado de buena fe conforme al tráfico usual y corriente.

Somos conscientes que *Fuentes v. Fulano de Tal*, 84 D.P.R. 506 (1962), da la impresión de que en los casos de billetes hurtados que son adquiridos posteriormente por un tercero, la persona a la que se le hurtan tiene disponible la acción reivindicatoria contra el tercero. Allí le dimos énfasis al hecho de que los recurrentes en dicho caso no adquirieron los sexagésimos, en tal forma que estuvieran comprendidos dentro de las disposiciones del Art. 393 del Código Civil, *supra*, ya que se habían adquirido de un sujeto que se dedicaba habitualmente a lavar carros. Además, dicha opinión está concentrada en analizar la posición de los poseedores de que los billetes eran valores al portador.

La situación de hechos aquí es distinta. Los billetes se adquirieron de personas que aparentaban dedicarse al comercio de billetes de lotería. Las personas que así adquieren están, como hemos dicho antes, protegidos bajo la teoría de prescripción instantánea, figura ampliamente reconocida en el derecho comparado.(9) Como nos ilustra Antonio Martín Pérez en sus comentarios al Art. 464 del Código Civil español:

### I. EFECTOS PROPIOS DE LA POSESIÓN DE BIENES MUEBLES

Regla fundamental y característica de la posesión de bienes muebles es la de que "la posesión de bienes muebles, adquirida de buena fe, equivale al título". Históricamente formulada, manifiesta con una u otra expresión en los ordenamientos actuales y de la que pretende deducirse que, dándose ciertos supuestos, la posesión de bienes muebles puede producir de manera inmediata, sin necesidad del tiempo que exige la usucapión, la adquisición del derecho real. Esta es la pretendida eficacia de la regla, que algunos autores quisieron expre-

---

(9) Cualquier pronunciamiento en contrario en *Fuentes v. Fulano de Tal*, 84 D.P.R. 506 (1962), y *Mieres, Fiscal v. Pagán*, 76 D.P.R. 699 (1954), queda expresamente revocado.

sar calificando este supuesto de adquisición del derecho real, a través de la posesión de muebles con buena fe, como de *prescripción instantánea.*

El artículo 464, C.c., nos dice: "La posesión de los bienes muebles, adquirida de buena fe, equivale al título. Sin embargo, el que hubiese perdido una cosa mueble o hubiese sido privado de ella ilegalmente podrá reivindicarla de quien la posea" . . . .

A primera vista y por el sentido directo de estas frases, difícilmente puede comprenderse lo que el precepto establece. Y ello porque, como dice HERNANDEZ GIL, constituye, más que una norma, una fórmula. Es decir, que en lugar de expresar todo un contenido dispositivo sobre las consecuencias de la posesión de bienes muebles, este contenido se halla solamente implícito en una fórmula breve en la que, históricamente, se ha convenido en encerrar tal significado. Por eso es necesario remontarse a la interpretación histórica de la regla "posesión de muebles equivale al título".

## II. NOTICIA HISTÓRICA

### 1. OPOSICIÓN DE LOS PRINCIPIOS ROMANOS Y GERMÁNICOS.

Originariamente encontramos una oposición entre el Derecho romano y el germánico en cuanto a los efectos de la posesión de bienes muebles. El Derecho romano no hacía diferencia entre bienes muebles e inmuebles en la posibilidad de reivindicación por el propietario. En cualesquiera manos que se encontrase la cosa, tanto mueble como inmueble, cualquiera fuera la condición de su tenedor actual, allí podía reivindicarla el propietario. La posesión, pues, carece en cualquier caso de eficacia para detener la acción reivindicatoria del propietario. Este régimen conoció algunas excepciones (Inst., 2, 8, 1; D. 16, 3, 1, 4), pero son aisladas frente a la regla general.

En el Derecho germánico, en cambio, se hacía en cuanto a las cosas muebles una distinción. Entre cosas que han salido voluntariamente del poder de su dueño y aquellas que éste ha dejado de poseer sin su voluntad. En cuanto a estas últimas, podía exigir de cualquier tercero su restitución. Pero en cuanto a las primeras, en que el propietario hacía voluntariamente dejación de su *Gewere* sobre la cosa, por ejemplo, dán-

dola en arrendamiento, comodato, depósito o prenda, sólo podía exigir la devolución de la otra parte, pero no recuperarla de un tercero que hubiera adquirido la *Gewere* de manos del arrendatario, depositario, etc. Cierto que todo ello ocurre en el plano de la *Gewere*, pero la *legitimación* que ésta confería al adquirente del poder sobre la cosa hacía su posesión inatacable.

Este régimen se encuentra en relación con la carencia de *Gewere* ideal respecto a las cosas muebles. A diferencia de lo que ocurre para los inmuebles, perdida la *Gewere* corporal no subsiste una ideal o de derecho sobre la cosa. Por ello importaba, sobre todo, el comportamiento de la persona a quien la cosa se confiaba. Lo que se expresaba con aforismos como "busca tu confianza donde la has dejado' mano" (*Hand wahre Hand*), con lo que se indica que es en la relación *inter partes*, entre titular de la *Gewere* y persona a quien éste la confía, donde reside la garantía del derecho.

Sólo una restricción se admite con respecto a las cosas hurtadas o sustraídas. Podía reaccionar violentamente el poseedor cuando el ladrón era sorprendido en el acto y llegó finalmente a admitirse la acción contra quien tuviera en su poder la cosa robada. Pero no se trata de una acción reivindicatoria de la propiedad, sino de una acción del poseedor o tenedor jurídico de la cosa.

Planteada así la inicial oposición entre el régimen romano de reivindicación en todo caso de la cosa mueble, y el germánico de protección al tercero que la hubiese adquirido de quien sobre ella tuviere la *Gewere* por voluntad del titular, producida la recepción del Derecho romano vinieron a superponerse a la construcción germánica algunas características romanas.

En primer lugar, lo que había discurrido hasta entonces en el plano confuso de la *Gewere* vino a traducirse en el de la propiedad y las titularidades reales. Lo que era imposibilidad de recuperación de la *Gewere* se convierte en excepción a la eficacia de la reivindicación en ese caso.

En segundo lugar, comenzó a tener importancia, no sólo el modo en que la posesión se había perdido, sino también cómo se había adquirido. Es decir, que si originariamente el Derecho germánico sólo atendía a las circunstancias de la pérdida de la *Gewere* —si se había o no transmitido voluntariamente—

por influencia romana y hasta canónica se va a atender también a las circunstancias de la·adquisición por el tercero, y en especial a su buena fe. Se aproxima el supuesto a la usucapión romana y por ello se le califica de "prescripción instantánea". (Escolios omitidos.) M. Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, Madrid, Ed. Edersa, 1980, T. VI, págs. 366–368.

Véase, además, en cuanto al Art. 85 del Código de Comercio español, equivalente al Art. 59 nuestro, *supra*, el comentario de Gay de Montellá al efecto de que:

La compra de mercaderías en almacenes o tiendas abiertas al público, causará prescripción de derecho a favor del comprador respecto de las mercaderías adquiridas, quedando a salvo en su caso los derechos del propietario de los objetos vendidos para ejercitar las acciones civiles o criminales que puedan corresponderle contra el que los vendiere indebidamente.

Para los efectos de esta prescripción, se reputarán almacenes o tiendas abiertas al público:

1°. Los que establezcan los comerciantes inscritos.

2°. Los que establezcan los comerciantes no inscritos, siempre que los almacenes o tiendas permanezcan abiertos al público por espacio de ocho ·días consecutivos, o se hayan anunciado por medio de rótulos, muestras o títulos en el local mismo, o por avisos repartidos al público o insertos en los diarios de la localidad.

COMENTARIO

El Código civil, al legislar sobre el alcance del derecho de posesión de las cosas muebles, dispone en el último párrafo del artículo 464, que "en cuanto a las adquiridas en Bolsa, feria o mercado, o de un comerciante legalmente establecido y dedicado habitualmente al tráfico de objetos análogos, se estará a lo que dispone el Código de Comercio". Es, pues, extensivo, por imperio de la ley común, o sea por el Código civil, el precepto relativo a la prescripción en favor del comprador respecto de las mercaderías adquiridas en almacenes o tiendas abiertas al público, a las mercaderías adquiridas con ocasión de ferias y a las adquiridas en los mercados públicos.

Por este artículo 85, el legislador proclama que la compra de mercaderías en almacenes o tiendas abiertas al público causa

prescripción de derecho a favor del comprador respecto de las mercaderías adquiridas. El fundamento de esta prescripción es la necesidad de asegurar la vida del comercio mediante el amparo de la posesión de las cosas compradas de buena fe en los almacenes o tiendas abiertas al público, siempre que éstas se ajusten a las dos condiciones que señala el Código de Comercio, o sea que hayan sido adquiridas en tiendas o almacenes de comerciantes inscritos en el Registro mercantil o en aquellas de comerciantes no inscritos que hayan tenido almacén o tienda abiertos por más de ocho días consecutivos o se hayan anunciado por medio de rótulos, muestras o títulos en el local mismo o por avisos repartidos al público o insertos en los diarios de la localidad.

Quiere el Código en el segundo caso, para que exista la prescripción a favor del comprador, si no una habitualidad en el ejercicio del comercio del vendedor, cuando menos una serie formal de signos externos bastantes para haber inducido o atraído al comprador de buena fe, quien no está obligado a conocer la procedencia legal o delictiva de los objetos y mercancías que se venden en tales almacenes o tiendas. Esta circunstancia no se da, sin embargo, en las ferias. Acuden a las ferias los negociantes con sus mercancías, frutos y ganados, sin ostentar su cualidad de comerciantes inscritos, ni vender en almacenes o tiendas abiertos al público ni anunciadas por rótulos, muestras o títulos en el local mismo en que se efectúa la venta. Si la feria dura ocho días consecutivos y durante ellos el vendedor hubiera permanecido al frente de su puesto, podría darse una interpretación extensiva al concepto de almacén o de tienda abierta al público tal como consigna el Código en su artículo 85, y sostenerse la aplicabilidad de la prescripción de las mercaderías compradas en almacenes o tiendas abiertos al público, a las mercaderías adquiridas con ocasión de una feria. No siendo así, entendemos que tal prescripción no es aplicable al caso de las ferias. En cambio, siendo la compra efectuada en feria, compra en venta pública, es de aplicación al caso el texto del párrafo 2.° del artículo 464 del Código civil, que dice: "Si el poseedor de una cosa mueble perdida o sustraída la hubiese adquirido de buena fe en venta pública, no podrá el propietario obtener la restitución sin reembolsar el precio dado por ella." No hay, pues, en este caso prescrip-

ción adquisitiva como en el caso previsto en el artículo que comentamos, sino, simplemente, rescisión del contrato y subsiguiente derecho al reembolso del precio pagado. R. Gay de Montellá, *Código de Comercio español, comentado—legislación, jurisprudencia y derecho comparado*, Barcelona, Ed. Bosch, 1936, T. I, págs. 352–354.

Nótese que en el Art. 59 de nuestro Código de Comercio, *supra*, no está incluida la disposición sobre venta en ferias. A la luz de lo expuesto, resolvemos que opera bajo los hechos presentes la doctrina de prescripción instantánea. Con ello se cumple con el interés apremiante que tiene el Estado de asegurar la vida del comercio de los billetes de lotería mediante el amparo de las cosas adquiridas de buena fe en la forma usual que éstas se adquieren en nuestra jurisdicción. Al así resolver, no consideramos el tráfico de otros objetos comerciales por vendedores ambulantes fuera de almacenes o tiendas abiertas al público, y el efecto que sobre dichas transacciones tienen el Art. 393 del Código Civil, *supra*, y el Art. 59 de nuestro Código de Comercio, *supra*. Tampoco limitamos la responsabilidad penal que pueda recaer sobre el Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274 (recibo de bienes apropiados ilegalmente).

Tampoco beneficia a los recurrentes la decisión en *Mojica v. Román Rodríguez*, 116 D.P.R. 45, 49–50 (1985), donde resolvimos que:

> Resolvemos, en su consecuencia, que por razón de que los billetes de la Lotería de Puerto Rico son "valores al portador" el director de dicha agencia viene obligado a pagar las fracciones de un billete premiado a aquellas personas que lo presentan para su cobro, *a menos que sea notificado*: (a) por el "jugador", en el caso en que éste se percata de la pérdida del billete *antes* de la celebración del sorteo, de acuerdo con lo prescrito por el Art. 10 de la citada Ley Núm. 465 de 1947, o (b) con una orden expedida por tribunal competente prohibiéndole así hacerlo, en el caso en que el "jugador" se da cuenta de la pérdida *con posterioridad* al sorteo; no incu-

rriendo en responsabilidad alguna el Estado Libre Asociado de Puerto Rico a menos que haya un incumplimiento por parte de la Lotería de Puerto Rico en relación con cualesquiera de las referidas "notificaciones". Resolver lo contrario representaría la destrucción del sistema de la Lotería.

En el presente caso no se hizo así. La demandante-recurrida, una vez celebrado el sorteo correspondiente, se limitó a notificar al referido director de la pérdida supuestamente sufrida. Dicha notificación, repetimos no era suficiente para impedir que la agencia haya proseguido adelante, en cumplimiento de la ley, con el pago de las fracciones del billete premiado. No existiendo responsabilidad legal por parte del Estado Libre Asociado de Puerto Rico y sus funcionarios, procede que se decrete la desestimación de la demanda radicada. Ello no significa, sin embargo, que la parte demandante esté totalmente huérfana de causa de acción. Al igual que los demandantes en los casos de *Mieres, Fiscal* v. *Pagán* y *Fuentes* v. *Fulano de Tal*, ante, la parte aquí recurrida podría tener una causa de acción contra aquellas personas que cobraron de la Lotería de Puerto Rico las fracciones que a dicha parte se le extraviaron; situación, naturalmente, que tendría que ser resuelta en un juicio plenario. (Énfasis en el original y escolio omitido.)

■ La referencia a *Mieres, Fiscal v. Pagán*, 76 D.P.R. 699 (1954), y a *Fuentes v. Fulano de Tal*, supra, no es determinante. Primero, es obviamente un *dictum* que resultaba innecesario para sostener la decisión. En segundo lugar, distinto a dicho caso, en los que aquí consideramos hubo prueba específica sobre la manera en que se adquirieron los sexagésimos. *Mojica v. Román Rodríguez*, supra, se limitó a reconocer el derecho a demandar, situación que no está aquí en controversia. Reiteramos, sin embargo, que aquel a quien se le extravíen, le destruyan o le sean hurtados billetes o fracciones de billetes de lotería, tiene que seguir el procedi-

miento establecido en el Art. 10 de la Ley de la Lotería de Puerto Rico, *supra*.([10])

Para ultimar, somos conscientes de que nuestra decisión afecta a los agentes, vendedores e intermediarios que han perdido la posesión de los billetes, ya sea por actos criminales de terceros o por su propia negligencia. Pero el interés público exige que el balance de conveniencia se incline a favor del comprador que, ajeno totalmente a las circunstancias en que el que le ofrece en venta advino en posesión de los sexagésimos, los compra y adquiere de buena fe con la expectativa de ser favorecido en el sorteo.([11])

*Se confirmarán todas las sentencias recurridas.*

El Juez Asociado Señor Rebollo López no intervino.

---

([10]) En los casos ante nos no está presente la situación dispuesta en la parte de dicho artículo que lee así:

"Si transcurrido el término de seis (6) meses que concede la sec. 122 de este título para el cobro de billetes premiados aparecieren pendientes de pago el billete o las fracciones de billete a que se refiere la declaración jurada antes mencionada, y no se hubiere iniciado el procedimiento establecido en el inciso (b) de esta sección, el Director del Negociado de la Lotería procederá a hacer el pago del premio que corresponda a la persona que suscribe la declaración jurada." 15 L.P.R.A. sec. 120(a).

Mediante la Ley Núm. 78 de 3 de junio de 1983, se añadieron los incisos (b) al (f) para establecer un procedimiento administrativo, cuando dos (2) ó más personas reclamen el derecho al pago del premio de un billete o fracciones de billete cuya cuantía no exceda de $500.

Para los derechos que se adquieren bajo este procedimiento, véanse: *García Colón v. Srio. Hacienda*, 99 D.P.R. 779 (1971), y *Cruz v. Director de la Lotería*, 94 D.P.R. 260 (1967). Allí se establece que si no hay otro reclamante del pago, la Lotería de Puerto Rico viene obligada, transcurridos los seis (6) meses, a pagar el premio a la persona que siguió el procedimiento del Art. 10 de la Ley de la Lotería de Puerto Rico, 15 L.P.R.A. sec. 120. Cuando, como en los casos ante nos, hay más de un reclamante, el Art. 56(d) del Reglamento para la Administración y Funcionamiento de la Lotería, aprobado el 31 de marzo de 1971, según enmiendas de 19 de mayo de 1981, establece que:

"Si se estableciere una controversia, el Negociado procederá a consignar el monto del premio objeto de controversia en el Tribunal correspondiente mediante demanda para que las partes litiguen entre sí el derecho al premio."

([11]) Es pertinente señalar que el agente vendedor no tiene expectativa de "pegarse" en el sorteo.